**IN THE UNITED STATE'S DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **STEPHEN TAPP,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 4:11-CV-02971** |
| | § | |
| **UNIVERSITY OF TEXAS HEALTH** | § | |
| **SCIENCES CENTER AT HOUSTON-** | § | |
| **SCHOOL OF DENTISTRY, DR. JOHN A.** | § | |
| **VALENZA, D.D.S., DEAN, AND SARGENT J.** | § | |
| **TAYLOR, BOTH INDIVIDUALLY** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEPHEN TAPP, (hereinafter referred to as "Plaintiff"), by and through his

attorney of record, Martin J. Cirkiel from the Law Firm of Cirkiel & Associates, complaining of the

UNIVERSITY OF TEXAS HEALTH SCIENCES CENTER AT HOUSTON- SCHOOL OF

DENTISTRY (hereinafter referred to as "Defendant" or the "Dental School," DR. JOHN A.

VALENZA, DEAN, and SARGENT J. TAYLOR, BOTH INDIVIDUALLY and files this his *First

Amended Complaint and Jury Demand* and would respectfully show as follows:

**I.  NATURE AND PURPOSE OF THE ACTION**

1.    Stephen Tapp was a student at the University of Texas Health Sciences Center at Houston-

School of Dentistry for the first two years of the program, where he was very successful.

Unfortunately, one of the teachers there targeted him, because of some obvious attention

related issues.  Now Mr. Tapp had been taking medications for some time, due to problems

with anxiety, but his problems with this one professor worsened and worsened, so much so

that he sought out the psychiatric and counseling care at the student center.  The physician there prescribed specific medication for his disorder and also suggested the school provide him a number of modifications and accommodations.

2.      In any case, and unfortunately, he fell behind in his work, to the further wrath of this teacher, resulting in his dismissal from the program.  He provided significant information to school officials, including and especially (then Interim) Dean, John A. Valenza, about his disability, and the need for accommodations, in order that he succeed in the program.  Even with significant information in support of Mr. Tapp, Dean Valenza failed to consider his disability, and upheld the dismissal.   Valenza sent Tapp a letter telling him of the decision. Shortly thereafter, Tapp filed a complaint with the Office of Civil Rights.

3.      In late December, Tapp set an appointment with a former professor, Dr. J. Bouquot D.D.S., to discuss his future educational and professional plans.  On December 21, 2010 Tapp entered the building and went to his professor's office.  While there he was met by campus police including Defendant Sargent J. Taylor of the University of Texas Health Sciences Police Department who, without any cause, physically accosted Tapp, had him handcuffed and transported him to jail.   Evidently Valenza, who had absolutely no cause to do so, directed Taylor to arrest Plaintiff.

4.      Plaintiff brings this action against the Dental School pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794a ("Rehabilitation Act") and the Americans with Disabilities Act ("ADA"), 42 U.S.C., §12101, et seq., for violation of his rights, as more fully described below.

5.      He also brings suit against Defendant John A. Valenza and Sargent J. Taylor, both in their

Individual Capacities, for violations of his constitutional rights pursuant to the due process clause of the 14th Amendment of the United States Constitution, and as contemplated by the Civil Rights Acts, 42 U.S.C. §1983.

6. For these and other civil rights violations, Plaintiff seeks damages and compensation, for the injuries more fully discussed below.

## II.  JURISDICTION

7. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §§ 1331 and 1343 because the matters in controversy arise under the laws and the Constitution of the United States.

8. In addition, jurisdiction is conferred upon this Court pursuant to the Rehabilitation Act and the Americans With Disabilities Act, and the federal regulations of both, issued thereunder.

9. Further, this Court has jurisdiction to award attorneys fees and costs to the Plaintiff under the Rehabilitation Act and the ADA, and also pursuant to 42 U.S.C. § 2000d *et seq*. and 42 U.S.C. § 1988.

## III. VENUE

10. Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs claims occurred in the Southern District of Texas.

## IV.  PARTIES

11. Stephen Tapp is an individual who lives at 8383 El Mundo Street, Houston, Texas.  He is a person with a disability.

12. The University of Texas Health Sciences Center at Houston- School of Dentistry, is a subdivision of the State of Texas, and is duly authorized under the laws of the State of Texas to educate persons, in the professional field of dentistry.  At all pertinent times the Defendant

Dental School was responsible for the care, management and control of all school business within its jurisdiction, including but not limited to the training of administrators, educators and other staff members as the rights, and their commensurate duties, as to students with disabilities.  In addition, the Defendant was the recipient of federal financial assistance to assure disabled and handicapped students received appropriate accommodations and modifications as necessary.  The Dental School has been sued and has answered by and through the Honorable Mishell B. Kneeland, Assistant Texas Attorney General, Post Office Box 12548, Capitol Station, Austin, Texas 78711-2548.

13. Dr. John A. Valenza, D.D.S., is the Dean at the University of Texas Health Sciences Center at Houston- School of Dentistry.  At all pertinent times the Defendant Valenza was responsible for the care, management and control of all school business within its jurisdiction, including but not limited to the training of administrators, educators and other staff members as the rights, and their commensurate duties, as to students with disabilities. He may be served individually at 6516 MD Anderson Blvd, Houston, Texas 77030.

14. Sargent J. Taylor, is a member of the University of Texas Health Sciences Center at Houston Police Department.  At all pertinent times Defendant Taylor was a professional peace officer, licensed by the State of Texas and employed by the University of Texas.  He was required to follow the standards of care, both of a constitutional and statutory nature, for a reasonable police officer in the State of Texas.  He may be served individually at the University of Texas Police Department at Houston, 1515 Holcombe Blvd., Houston, Texas 770303.

## V. STATEMENT OF FACTS

15. Stephen Tapp has been a licensed nurse since June of 2000 but wanted to fulfill his dream

of becoming a dentist and entered the University of Texas Health Sciences Center at Houston- School of Dentistry in August of 2006.   In June of that year he suffered a concussion and was prescribed medication since that time to deal with the injury, anxiety and migraine headaches.   Nevertheless, this problem did not interfere with his early success at the dental school.

16.   For instance, he earned an 88 on the National Board Exam, Part One.  His grade average was 88.  His class attendance was regular and his clinic attendance as of January of 2009 was 99%.  He assisted twice the amount of others in the *Periodontal Surgery Clinic,* was a regular at the *Ben Taub General Hospital Clinic*, volunteered at the *UT Dental Branch Smile Days*, treated patients on the *Free Dental Mission Events* in Houston and showed his research at te *American Dental Research Conferences* in both 2008 and 2009.  In fact, he won second place at the ALD International laser Conference in Lass Vegas, in 2009.  He was well on the way to become a very successful dentist until he was required to take a class with Dr. Deborah R. Franklin, Associate Professor.

17.   Evidently Franklin has a pattern and practice of fixating on one or two students each semester and using almost every opportunity possible to berate them.  In fact, and in the prior year Franklin had ostracized another student C. Kimball, now a licensed Dentist, also who had ADHD.

18.   During that year she also went after Mr. Vu Chau, a student who had a disability, who was also later dismissed from the school. Whether it was Tapp's delayed responses to verbal cues, his organization problems in her class, his similarities to these other students, or some other manifestation of his emerging disability, Franklin missed no opportunity to loudly

upbraid and intimidate Tapp and clearly regarded him as a student with a disability.

19.     On one occasion she warned him and said "Don't you be like ..." the student from the previous year. On another occasion she chased him down the hall screaming at him, with everyone else to see.  Not only did she discriminate against Tapp based upon his disability, she retaliated against him as well.  For instance, she purposefully refused to provide him with enough patients to earn the points he needed to make sufficient grades to stay in school.

20.     In fact, her outbursts were well-known to other faculty members.  For instance, Dr. C.D. Johnson prompted that Mr. Tapp file a complaint about Franklin with the Associate Clinical Dean, Peggy O'Neill.  He did so in April of 2009, but she refused to intervene.

21.     It is no wonder that Tapp's anxiety and other manifestations of his disabilities became exacerbated during this period.  In January of 2009 Mr. Tapp went to the UT Student Health Services Center for treatment of these conditions.  In fact, the physician was concerned and put a notation in the medical record that Tapp should "Plan to schedule a neuropsychology test for ADD." Unfortunately, Mr. Tapp never learned of this notation until after he accessed his medical records after his dismissal.

22.     On May 27th Mr. Tapp visited his therapist at the student center.  The notes reflect his concern that Franklin was abusing him in front of classmates and that he was becoming more and more uncomfortable, worried and anxious.

23.     On July 23rd Tapp was given notice it was recommended he be dismissed from the school. An *Ad Hoc Appeals Committee* was set for August 4th.

24.     On that same day he returned to the Health Center, Tapp asked about his medical condition and was soon diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), and

medication was prescribed.  Nevertheless, the physician told tapp not to communicate this information to school officials, as he believed such information would be used against Tapp. He evidently knew that the school had a custom to use this type of information against a student.

25.     In late July Tapp consulted with a private psychiatrist, Dr. Ajinder S. Dhatt, who also confirmed a diagnosis of ADHD, Type 2 and prescribed medications.  He wrote a letter with his finding that Mr. Tapp later provided to the Dean's office.

26.     Tapp spoke with his *Ad Hoc* Advisors.  One, Dr. Charles Strekfus, D.D.S., knew that Tapp has some disability related concerns but he too specifically told him not to bring them up in the committee meeting.  He evidently knew that the school had a custom to use this information against a student.

27.     On August 4th he met with the *Ad Hoc Appeals Committee* who upheld the dismissal.

28.     On August 8th Tapp provided Dean Valenza's office, copies of letters noting his medical, mental health and disability related issues.

29.     On August 12th, Dr. Janet Bond Rexroad, EdD, Licensed Psychologist and Linda J. Cordell, M.D., both with the *UT Counseling & Worklife Services*, wrote and signed a letter directed to Dr. Charles Streckfus, D.D.S., which was also provided to the Dean's Office.

30.     It noted, that Tapp had seen a therapist at the center for an intake, who referred him for a psychiatric evaluation.  After that consult he was referred to a psychologist for a screening for *Attention Deficit Hyperactivity Disorder.*  Based upon both these evaluations he was prescribed medication to address anxiety and attention related issues.

31.     In their note of the 12th, both Rexroad and Cordell noted they believed Tapp to have the

requisites to be successful but likely would need certain accommodations and modifications. Specifically, that he should get extra time during examinations and have separate room during examinations, have the opportunity with regular meeting with staff to address any issues of concern.   They both voiced their support for Mr. Tapp and volunteered to be of assistance to further this effort.

32.    Tapp met with Valenza also on the 12th.   Valenza told Tapp he would take until the 21st to review the committee recommendations, and issue his final decision.

33.    Also on the 12th, Tapp sent an email to the school's attorney, David Jenkins, attempting to find information on how he learn about the school's Section 504 programs for students with disabilities.

34.    Tapp also looked on the school's website for such 504 information but none of the links were functioning.

35.    Tapp also had contact with Assistant Academic Dean. Leslie Roeder that day.  He let her know that he would be meeting with a private attorney to represent him against the school.

36.    On the very next day, the 13th, and changing his mind about waiting until the 21st, after learning Tapp was seeking legal counsel, Dean Valenza sent Tapp a letter upholding the decisions and confirming his dismissal from the program.  In the letter, Tapp was directed to cease all activity and return any school-related items within five (5) days.

37.    On September 11th Tapp, through his attorney,  filed a complaint with the school, which was directed to Dr. Roeder.  It was later forwarded to the school's compliance office.  The Compliance Officer informed Tapp an investigation would follow, but only if Tapp waived his right to have his counsel present. As Tapp refused to do so, the complaint was never

fully investigated.

38.    After he was dismissed from the Dental School Plaintiff was compelled to plan for his educational and professional future.  Not surprisingly, he turned to one of his former mentors, Dr. Jerry Bouquot, for advice and counsel.  Plaintiff called his office, spoke with his secretary and made necessary arrangements to meet him on December 21, 2010, well over a year after his dismissal from the school.

39.    While peacefully meeting in his former professor's office, and without just cause, two officers, S. Beltran and Defendant J. Taylor from the *University Of Texas System Police Department* interrupted the meeting.  And even though Tapp was clearly and obviously calm and cooperative, Sgt. Taylor, detained and arrested him, rather than simply asking him to leave the premises.  In addition, Taylor used excessive force when twisting Tapp's right thumb in an effort to handcuff him, which also was unnecessary and without cause.  This Defendant then transported Plaintiff to the Harris County Jail, which was also unnecessary and without cause where he was charged a trespass charge.  Tapp was released from jail the next day.

40.    Apparently the two police officers had been instructed by the Dean, Defendant Valenza to arrest Tapp.  Valenza told the officers that he had sent Tapp a letter warning him that if he came on campus, he would be arrested for trespass. This was not true, Tapp never received such a letter. In fact, the trespass charge was later dismissed because there was no evidence that Tapp had received such notice.  In fact, Professor Bouquot wrote a letter of support, noting that Tapp had been meeting with him on "official business" and with his permission.

41.    Apparently after 2008 the dental school had no students with a disability receiving any

accommodations or modifications to the program.

## VI. <u>CLAIMS UNDER THE REHABILITATION ACT OF 1973</u>

42.    Plaintiff incorporates by reference all allegations the above related paragraphs, with the same force and effect as if herein set forth.

43.    The facts as previously described demonstrate violations of Section 504 of the Rehabilitation Act, 29 U.S.C. §794 ("Rehabilitation Act").

44.    Tapp is a qualified individual with a disability in the United States, as defined in 29 U.S.C. § 705(20).

45.    The University of Texas Health Sciences Center at Houston- School of Dentistry, receives Federal financial assistance, as defined by 29 U.S.C. §794 and as such, may not discriminate against a person because of their disability.

46.    Solely by reason of his disability, Mr. Tapp was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at the Defendant Dental School, such acts and omissions violating the Rehabilitation Act thereby.

47.    The Defendant exercised bad faith in failing to provide appropriate and necessary accommodations and modifications to Plaintiff, so that he could continue in his educational program, a violation of the Rehabilitation Act thereby.

48.    In addition and in the alternative to the above-noted violation of the Rehabilitation Act, the Defendant also violated the act when retaliating against Plaintiff when he began to advocate for his rights.

49.    Such acts, omissions and failures by the Defendant caused injuries to Plaintiff.

First Amended Complaint                                                                                        10

## VII.  CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT

50.    Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

51.    In addition and in the alternative to the above, the facts as previously described demonstrate violations of the Americans with Disabilities Act, 42 U.S.C. §12131, et seq ("ADA").

52.    Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

53.    The University of Texas Health Sciences Center at Houston- School of Dentistry, is a "public entity" as defined in 42 U.S.C. §12131(1), and receives federal financial assistance so as to be covered by the mandate of the ADA.

54.    The University of Texas Health Sciences Center at Houston- School of Dentistry, and its schools are facilities and their operation constitutes a program and services for ADA purposes.

55.    The Defendant failed and refused to reasonably accommodate and modify its services in violation of Title II of the ADA.

56.    Such failures caused injuries to Plaintiff.

## VIII. CLAIMS PURSUANT TO 42 U.S.C. §1983
## AND THE 14th AMENDMENT TO THE U.S. CONSTITUTION

57.    Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

58.    Defendants Valenza and Taylor acting under color of law deprived Plaintiff of rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States.

59.    Defendant Valenza illegally and unconstitutionally directed Defendant Taylor to arrest

Plaintiff without just cause and without due process of law.

60.   When Defendant Taylor arrested Plaintiff he used excessive force without just cause, such excessive force was both illegal and unconstitutional.

61.   Further, the acts of both Defendant Valenza and Taylor, deprived C.A. of his liberty interests and right to bodily integrity, both guaranteed pursuant to the United States Constitution, for which these Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983 for compensatory monetary damages.

## IX.  PROXIMATE CAUSE

62.   Plaintiff incorporate by reference all allegations the above related paragraphs with the same force and effect as if herein set forth.

63.   Each and every, all and singular of the foregoing acts and omissions, on the part of the University of Texas Health Sciences Center at Houston- School of Dentistry Defendant, and Defendants Valenza and Taylor taken separately and/or collectively, both jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## X. RATIFICATION

64.   Plaintiff incorporates by reference all the above related paragraphs, as if fully set forth.

65.   The University of Texas Health Sciences Center at Houston- School of Dentistry Defendant ratified the acts, omissions and customs of all school administrators, educators, personnel and staff.

66.   As a result the Defendant is responsible for the acts and omissions of all school administrators, educators, personnel and staff.

## XI.  DAMAGES

First Amended Complaint                                                                          12

67.     Plaintiff incorporates by reference all the above related paragraphs, as if fully set forth.

68.     As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered injuries and damages, which he may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to the following:

      a.     Reasonable medical care and expenses in the past. These expenses were incurred by the subject of this lawsuit, for the necessary care and treatment of the injuries resulting from the accident complained of herein and such charges are reasonable and were usual and customary charges for such services in Harris County, Texas;

      b.     Mental anguish in the past;

      c.     Mental anguish in the future;

      d.     Reimbursement of all tuition;

      e.     Loss of opportunity; and

      f.     Lost wages.

69.     By reason of the above, the subject of this lawsuit, Plaintiff has suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.

## XII.  ATTORNEY FEES

70.     Plaintiff incorporates by reference all the above related paragraphs, as if fully set forth.

71.     It was necessary for Plaintiff to hire the undersigned attorneys to file this lawsuit.  Upon judgment, Plaintiff is entitled to an award of attorney fees and costs under 29 U.S.C. § 794a, as well as pursuant to the ADA and 42 U.S.C. § 2000d *et seq*. and related to civil rights violations pursuant to Section 1988 of the Civil Rights Acts.

## XIII.  PUNITIVE DAMAGES

72.     Plaintiff incorporates by reference all the above related paragraphs, as if fully set forth.

73.     Review of the acts and omissions of the Defendants, evidence that they have been

consciously indifferent, deliberately indifferent, and acted with wanton disregard to the rights of Plaintiff Tapp and are liable to him for Punitive Damages.

## XIV.  DEMAND FOR JURY TRIAL

74.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, in the manner and particulars noted above, and in an amount sufficient to fully compensate him for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Section 504, the ADA and 42 U.S.C. § 2000d *et seq*., and 42 U.S.C. §1988, *et seq*.,  together with pre- and post-judgment interest, and court costs expended herein, and for such other relief as this Court in equity, deems just and proper, including but not limited to readmission to the program.

Respectfully submitted,

Cirkiel & Associates, P.C.

_____

/s/ Mr. Martin J. Cirkiel, Esq.
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]
Texas Bar No. 00783829
Souther District Fed. ID# 21488

ATTORNEYS FOR PETITIONER

## <u>CERTIFICATE OF SERVICE</u>

   This is to certify that on this the 1st day of November 2011, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic filing system of the Court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means:

Honorable Mishell B. Kneeland, Attorney
Texas Bar No. #24038256
Southern District Federal ID #313250
Assistant Texas Attorney General
Post Office Box 12548
Capitol Station, Austin
Texas 78711-2548
(512) 463-2120 [Telephone]
(512) 320- 0667 [Facsimile]


         /s/ Martin J. Cirkiel