IN THE UNITED STATE'S DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN TAPP, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 4:11-CV-02971 |
| | § | |
| UNIVERSITY OF TEXAS HEALTH | § | |
| SCIENCES CENTER AT HOUSTON- | § | |
| SCHOOL OF DENTISTRY, DR. JOHN A. | § | |
| VALENZA, D.D.S., DEAN, AND SARGENT J. | § | |
| TAYLOR, BOTH INDIVIDUALLY | § | |
| Defendants. | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEPHEN TAPP, (hereinafter referred to as "Plaintiff"), by and through his attorney of record, Martin J. Cirkiel from the Law Firm of Cirkiel & Associates, complaining of the UNIVERSITY OF TEXAS HEALTH SCIENCES CENTER AT HOUSTON-SCHOOL OF DENTISTRY (hereinafter referred to as "Defendant" or the "Dental School," DR. JOHN A. VALENZA, DEAN, and SARGENT J. TAYLOR, BOTH INDIVIDUALLY and files this his *Second Amended Complaint and Jury Demand* and would respectfully show as follows:

## I. NATURE AND PURPOSE OF THE ACTION

1.  Stephen Tapp is a student with a history of receiving treatment for anxiety and migraine headaches prior to the time he was admitted to the University of Texas Health Sciences Center-School of Dentistry. Fortunately, for the first two years of the program, he was very successful. Unfortunately thereafter, Dr. Deborah Franklin, one of the teachers at the school, singled him out for harassment and degradation.

2.   While Mr. Tapp had been taking medications for a significant period of time, the problems he experienced with this one professor worsened so much so that he sought out the psychiatric and counseling care services at the UT student center.  The physician at the student center  prescribed specific medication for his disorder but told him not to bring up his emotional disability with UTHSC personnel, as it would be held against him.

3.   The harassment by Franklin continued.  He filed a complaint against the professor.  It was never investigated by UTHSC staff.

4.   Tapp told one of his professor's about Franklin and that her harassment had caused him to become more and more depressed and anxious. The professor also told him not to bring up his emotional disability with UTHSC personnel, as it would be held against him.

5.   Tapp received a letter informing him of his dismissal from the program.  Even though he had a known and obvious disability, school personnel failed to consider his disability when making this decision.

6.   He asked for a review of the dismissal.  Tapp provided significant written information to school officials from medical and treatment personnel about his disability and the need for accommodations, in order that he remain in the program.  Franklin and others on the review committee refused to consider his disability.

7.   Tapp appealed to the (then Interim) Dean, John A. Valenza, about his disability and the need for accommodations, in order that he remain in the program.  Even with significant information in support of Mr. Tapp, Dean Valenza too failed to consider his disability and upheld the dismissal.  Valenza sent Tapp a letter telling him of the decision.  Shortly thereafter, Tapp filed a complaint with the Office of Civil Rights.

8.      In late December, Tapp set an appointment with another professor at the school, Dr. J. Bouquot, D.D.S., to discuss his future educational and professional plans.

9.      On December 21, 2010, Tapp entered the building and went to his professor's office.  While there he was met by campus police; including Defendant Sargent J. Taylor of the University of Texas Health Sciences Police Department, who, without any cause, physically accosted Tapp, had him handcuffed and transported him to jail. Evidently Valenza; who had absolutely no cause to do so, was retaliating against Tapp for filing a complaint and directed Taylor to arrest Plaintiff.

10.     Plaintiff brings this action against the University of Texas Health Sciences Center-Dental School, pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794a ("Rehabilitation Act")  and the Americans with Disabilities Act ("ADA"), 42 U.S.C., §12101, et seq., for violation of his rights, as more fully described below.

11.     He also brings suit against Defendant John A. Valenza and Sargent J. Taylor, both in their Individual Capacities, for violations of his constitutional rights pursuant to the due process clause of the 14th Amendment of the United States Constitution, and as contemplated by the Civil Rights Acts, 42 U.S.C. §1983.

12.     Plaintiff seeks damages and compensation for these and other civil rights violations and for the injuries more fully discussed below.

## II.  JURISDICTION

13.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §§ 1331 and 1343 because the matters in controversy arise under the laws and the Constitution of the United States.

14.     In addition, jurisdiction is conferred upon this Court pursuant to the Rehabilitation Act and

the Americans With Disabilities Act, and the federal regulations of both, issued thereunder.

15.     Further, this Court has jurisdiction to award attorneys fees and costs to the Plaintiff under the

Rehabilitation Act and the ADA, and also pursuant to 42 U.S.C. § 2000d *et seq*. and 42

U.S.C. § 1988.

### III. <u>VENUE</u>

16.     Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions

giving rise to the Plaintiffs claims occurred in the Southern District of Texas.

### IV. <u>PARTIES</u>

17.     Stephen Tapp is an individual who lives at 8383 El Mundo Street, Houston, Texas.  He is a

person with a disability.

18.     The University of Texas Health Sciences Center-School of Dentistry, is a subdivision of the

State of Texas, and is duly authorized under the laws of the State of Texas to educate persons

in the professional field of dentistry.  At all pertinent times the Defendant Dental School was

responsible for the care, management and control of all school business within its

jurisdiction, including but not limited to the training of administrators, educators and other

staff members as the rights and their commensurate duties as to students with disabilities.

In addition, the Defendant was the recipient of federal financial assistance to assure disabled

and handicapped students received appropriate accommodations and modifications as

necessary.  The Dental School has been sued and has answered by and through the Honorable

Mishell B. Kneeland, Assistant Texas Attorney General, Post Office Box 12548, Capitol

Station, Austin, Texas 78711-2548.

19.     Dr. John A. Valenza, D.D.S., is the Dean at the University of Texas Health Sciences Center-

School of Dentistry.  At all pertinent times the Defendant Valenza was responsible for the care, management and control of all school business within its jurisdiction, including but not limited to the training of administrators, educators and other staff members as the rights and their commensurate duties as to students with disabilities.   While he may be served individually at 6516 MD Anderson Blvd, Houston, Texas 77030, the Honorable Mishell B. Kneeland, Assistant Texas Attorney General, Post Office Box 12548, Capitol Station, Austin, Texas 78711-2548 has let it be known she will waive service on behalf of this Defendant.

20.   Sargent J. Taylor, is a member of the University of Texas Health Sciences Center at Houston Police Department.  At all pertinent times Defendant Taylor was a professional peace officer, licensed by the State of Texas and employed by the University of Texas.  He was required to follow the standards of care; both of a constitutional and statutory nature, for a reasonable police officer in the State of Texas.  While he may be served individually at the University of Texas Police Department at Houston, 1515 Holcombe Blvd., Houston, Texas 770303, Honorable Mishell B. Kneeland, Assistant Texas Attorney General, Post Office Box 12548, Capitol Station, Austin, Texas 78711-2548, has let it be known she will waive service on behalf of this Defendant.

## V.  STATEMENT OF FACTS

21.   Stephen Tapp has been a licensed nurse since June of 2000, but wanted to fulfill his dream of becoming a dentist.

22.   In June of 2006, he suffered a concussion and since that time has had to deal with the injury, migraine headaches and anxiety.  He was prescribed psychoative medications for his medical

and emotional needs.

23.   He entered the University of Texas Health Sciences Center-School of Dentistry in August of 2006.   At that time Plaintiff signed documents agreeing to follow certain standards of academic proficiency so as to be able to remain at the school.  In return the UTHSC agreed, both formally and informally, to provide Plaintiff certain academic and non-academic services to Plaintiff so as to give him the best opportunity to fulfill his pledge and agreement.

24.   Importantly, his medical problems did not interfere with his early success at the dental school.  In fact, he earned an 88 on the National Board Exam, Part One.  His grade average was 88.  His class attendance was regular and his clinic attendance as of January of 2009 was 99%.

25.   The record would reflect Tapp also assisted and volunteered at about twice the rate of other students at the *Periodontal Surgery Clinic.*  Mr. Tapp was also a regular at the *Ben Taub General Hospital Clinic.* He also volunteered at the *UT Dental Branch Smile Days* and treated patients on the *Free Dental Mission Events* in Houston.

26.   He even presented some of his research at the *American Dental Research Conferences* in both 2008 and 2009.  In fact, he won second place at the ALD International laser Conference in Las Vegas in 2009.

27.   Mr. Tapp was well on the way to become a very successful dentist until he was required to take a class with Dr. Deborah R. Franklin, an Associate Professor at the Dental School.

28.   Evidently Franklin has a pattern and practice of fixating on one or two students each semester and using almost every opportunity possible to berate and harass them.  It is further

well-known that she will often fixate on a person for this purpose because that person has an observable emotional or mental disability.  In the prior year Franklin had ostracized another dental student, a C. Kimball (now a licensed Dentist), who also had an observable disability, Attention Deficit Hyperactivity Disorder.

29.     During that year Franklin also vented her *animus* against Mr. Vu Chau, a student who also had an observable mental health disability.  He too was later dismissed from the school.

30.     Whether it was Tapp's observable anxiety in dealing with stress, his delayed responses to verbal cues, his problems with organizing his thoughts in her class, his similarities to these other students, or some other manifestation of his ongoing and emerging emotional disability, Franklin missed no opportunity to loudly upbraid and intimidate Tapp in front of others.

31.     She clearly regarded him as a student with a disability.  In fact, on one occasion she warned him and said "Don't you be like ..." the student from the previous year. On another occasion; in front of other students,  she chased him down the hall screaming at him and also pushed him.

32.     Not only did she discriminate against Tapp based upon his disability, she retaliated against him as well.  For instance, she purposefully refused to provide him with enough patients to earn the points he needed to make sufficient grades to stay in school.

33.     In fact, her outbursts were well-known to other faculty members.  For instance, Dr. C.D. Johnson prompted that Mr. Tapp file a complaint about Franklin with the Associate Clinical Dean, Peggy O'Neill.  He did so in April of 2009, but she refused to intervene.  The Complaint was never investigated.

34.     It is no wonder that Tapp's anxiety and other manifestations of his disabilities became exacerbated during this period.

35.     In January of 2009 Mr. Tapp went to the UT Student Health Services Center for treatment of these conditions.  While there, the physician was concerned and put a notation in the medical record that Tapp should "Plan to schedule a neuropsychology test for ADD." Unfortunately, Mr. Tapp never learned of this notation, and was not able to discover this important fact, until after he was dismissed from the school and attempted to access his medical records.

36.     On May 27th, Mr. Tapp visited his therapist at the student center.  The notes reflect the therapist's concern that Professor Franklin was abusing Stephen in front of classmates.  The notes also reflect the concern hat Stephen was becoming more and more uncomfortable, worried and anxious.

37.     On July 23rd , Tapp received a letter from Leslie Roeder, DDS, MS, Associate Dean, giving him notice that the "Student Evaluation And Promotion Committee" had met and it was recommended he be dismissed from the school.  The Committee failed to consider Tapp's mental health condition when making this recommendation.  In a related vein, the Committee failed to consider provide Tapp any modification or accommodation so that he could remain at the school.

38.     Also, on the 23rd Stephen returned to the Health Center and asked about his medical condition.  He received a diagnosis of *Attention Deficit Hyperactivity Disorder* ("ADHD"), and medication was prescribed.  Nevertheless, the physician told Tapp not to communicate this information to  school officials as he believed such information would be used against

Tapp.  The doctor evidently knew that the school had a custom and practice to use this type of information against a student.

39.     In any case, Tapp was given the option to appeal the decision.  He did so and an *Ad Hoc Appeals Committee* was set for August 4th.

40.     Also during this period, and in late July, Tapp consulted with a private psychiatrist, Dr. Ajinder S. Dhatt, M.D.  He too confirmed the diagnosis of ADHD, Type 2 and prescribed medications.  He wrote a letter with his finding that Mr. Tapp later provided to the Dean's office.

41.     Tapp spoke with his *Ad Hoc* Advisors prior to the meeting.  One Professor, Dr. Charles Strekfus, D.D.S., knew that Tapp has some emotional disability related concerns but he too specifically told him not to bring them up in the committee meeting.  Stefkus evidently knew what others has also stated, that the UTHSC-Dental School had a custom to use this information against a student.

42.     On August 4th he met with the *Ad Hoc Appeals Committee.*  Deborah R. Franklin, was at the session and was extremely vehement and caustic in her support for dismissal. The Committee upheld the dismissal.  This Committee failed to consider Tapp's mental health condition when making this recommendation. This Committee also failed to consider any modification or accommodation so Tapp could remain at the school.

43.     Plaintiff reasonably believes that the Committee was not careful and deliberate when making its decision.  Rather the Committee was arbitrary in its review of the facts, discounting all evidence of disability.

44.     On August 8th, Tapp provided Dean Valenza's office copies of letters noting his medical,

mental health and disability related issues.

45.    On August 12th, Dr. Janet Bond Rexroad, EdD, Licensed Psychologist, and Linda J. Cordell, M.D., both with the *UT Counseling & Worklife Services*, wrote and signed a letter directed to Dr. Charles Streckfus, D.D.S., which was also provided to the Dean's Office.

46.    Their letter to Dr. Streckfus noted that Tapp had seen a therapist at the center for an intake who referred him for a psychiatric evaluation.  After that consult he was referred to a psychologist for a screening for *Attention Deficit Hyperactivity Disorder*.  Based upon both these evaluations he was prescribed medication to address anxiety and attention related issues.

47.    In their note of the 12th, both Rexroad and Cordell noted they believed Tapp to have the requisites to be successful but likely would need certain accommodations and modifications. Specifically, that he should get extra time during examinations and have separate room during examinations, have the opportunity with regular meeting with staff to address any issues of concern.   They both voiced their support for Mr. Tapp and volunteered to be of assistance to further this effort.

48.    Tapp met with Valenza, also on the 12th.   Valenza told Tapp he would take until the 21st to review the committee recommendations, and issue his final decision.

49.    Also on the 12th, Tapp sent an email to the school's attorney, David Jenkins, attempting to find information on how he could learn about the school's Section 504 programs for students with disabilities.

50.    Tapp also looked on the school's website for such 504 information but none of the links were functioning.

51.     Tapp also had contact with Assistant Academic Dean. Leslie Roeder that day.  He let her know that he would be meeting with a private attorney to represent him against the school based upon his concerns he was a victim of discrimination based upon disability.

52.     On the very next day, the 13th, Dean Valenza sent Tapp a letter upholding the decisions and confirming his dismissal from the program.  In the letter, Tapp was directed to cease all activity and return any school-related items within five (5) days. Apparently, Valenza changed his mind about waiting until the 21st to make a decision, after learning Tapp was seeking legal counsel and Section 504 accommodations.

53.     On September 11th, Tapp, through his attorney,  filed a complaint with the school which was directed to Dr. Roeder.  It was later forwarded to the school's compliance office.  The Compliance Officer informed Tapp an investigation would follow but only if Tapp waived his right to have his counsel present.  As Tapp refused to do so, this complaint also was never fully investigated.

54.     After he was dismissed from the Dental School Plaintiff was compelled to plan for his educational and professional future.  Not surprisingly, he turned to one of his former mentors, Dr. Jerry Bouquot, for advice and counsel.  Plaintiff called his office, spoke with his secretary and made necessary arrangements to meet him on December 21, 2010, well over a year after his dismissal from the school.

55.     While peacefully meeting in his former professor's office, and without just cause, two officers, S. Beltran and Defendant J. Taylor from the *University Of Texas System Police Department,* interrupted the meeting. And even though Tapp was clearly and obviously calm and cooperative, Sgt. Taylor, detained and arrested him, rather than simply asking him to

leave the premises.

56.    In addition, Taylor used excessive force when twisting Tapp's right thumb in an effort to handcuff him, which also was unnecessary and without cause.

57.    This Defendant then transported Plaintiff to the Harris County Jail; which was also unnecessary and without cause, where he was charged a trespass charge. Tapp was released from jail the next day.

58.    Apparently the two police officers had been instructed by the Dean, Defendant Valenza, to arrest Tapp. Valenza told the officers that he had sent Tapp a letter warning him that if he came on campus, he would be arrested for trespass.

59.    This was not true. The school had never written such a letter nor had Tapp ever received such a letter. In fact, the trespass charge was later dismissed because there was no evidence that Tapp had received such notice. In fact, Professor Bouquot wrote a letter of support, noting that Tapp had been meeting with him on "official business" and with his permission.

60.    Apparently after 2008 the dental school had no students with a disability receiving any accommodations or modifications to the program.

## VI.  CLAIMS UNDER THE REHABILITATION ACT OF 1973

61.    Plaintiff incorporates by reference all allegations the above related paragraphs with the same force and effect as if herein set forth.

62.    The facts as previously described demonstrate violations of Section 504 of the Rehabilitation Act, 29 U.S.C. §794 ("Rehabilitation Act").

63.    Tapp is a qualified individual with a disability in the United States, as defined in 29 U.S.C. § 705(20).

64.     The University of Texas Health Sciences Center-School of Dentistry, receives Federal financial assistance, as defined by 29 U.S.C. §794, and as such may not discriminate against a person because of their disability.

65.     Solely by reason of his disability, Mr. Tapp was excluded from the participation in and denied the benefits of the Defendant Dental School. Also, solely by reason of his disability, Mr. Tapp was and subjected to discrimination, exploitation and a hostile educational environment at the Defendant Dental School; such acts and omissions violating the Rehabilitation Act thereby.

66.     The Defendant exercised bad faith in failing to provide appropriate and necessary accommodations and modifications to Plaintiff so that he could continue in his educational program, a violation of the Rehabilitation Act thereby.

67.     The Defendant exercised bad faith in failing to investigate complaints by Mr. Tapp that he was being harassed by a teacher due to his disabilities, such failure a violation of the Rehabilitation Act thereby.

68.     In addition and in the alternative to the above-noted violation of the Rehabilitation Act, the Defendant also violated the act when retaliating against Plaintiff when he began to advocate for his rights.

69.     Such acts, omissions and failures by the Defendant caused injuries to Plaintiff.

### VII.  CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT

70.     Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

71.     In addition and in the alternative to the above, the facts as previously described demonstrate

violations of the Americans with Disabilities Act, 42 U.S.C. §12131, et seq ("ADA").

72.    Plaintiff is a, "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

73.    The University of Texas Health Sciences Center-School of Dentistry is a, "public entity" as defined in 42 U.S.C. §12131(1), and receives federal financial assistance so as to be covered by the mandate of the ADA.

74.    The University of Texas Health Sciences Center-School of Dentistry and its schools are facilities and their operation constitutes a program and services for ADA purposes.

75.    The Defendant failed and refused to reasonably accommodate and modify its services in violation of Title II of the ADA.

76.    The Defendant retaliated against Plaintiff when he began to advocate for his rights, pursuant to the ADA.

77.    Such failures caused injuries to Plaintiff.

## VIII. CLAIMS PURSUANT TO 42 U.S.C. §1983 AND THE 14th AMENDMENT TO THE U.S. CONSTITUTION

78.    Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

79.    Plaintiff has a property interest in his public education that would lead to a professional license as a dentist, such right guaranteed to him pursuant to the due process clause of the 14th Amendment to the United States Constitution. This is a "substantive due process" right.

80.    As an extension of this property interest in his public education, Plaintiff also has a right that any decision that he be dismissed from the school be careful and deliberate. As the decision was not careful and deliberate, it too violates the rights guaranteed to him pursuant to the due process clause of the 14th Amendment to the United States Constitution. This is a "procedural

due process" right.

81.     Plaintiff also has a right of freedom of speech and to not suffer from retaliation due to such speech, pursuant to the to the 1st Amendment of the United States Constitution.

82.     Plaintiff also has a right to be free from excessive force, pursuant to the to the 4th Amendment of the United States Constitution.

83.     Plaintiff also has a liberty interest, such right guaranteed pursuant to the to due process clause of the 14th Amendment of the United States Constitution.

84.     Plaintiff also has a right to bodily integrity, such right also guaranteed pursuant to the to due process clause  of the 14th Amendment of the United States Constitution.

85.     Plaintiff also has a right to be free from an illegal and unwarranted arrest, such right guaranteed pursuant to the to due process clause of the 14th Amendment of the United States Constitution.

86.     Plaintiff also has a right to be free from an illegal and unwarranted imprisonment, such right guaranteed pursuant to the to due process clause of the 14th Amendment of the United States Constitution.

87.     These are all substantive rights.

88.     The acts and omissions of Defendant Valenza, deprived Plaintiff of his rights pursuant to the U.S. Constitution, *Bill Of Rights* at the 1st (freedom of speech), the 4th (right to be free from excessive force) and 14th Amendments (property interest in his public education; liberty interest, bodily integrity, illegal and unwarranted arrest, illegal and unwarranted imprisonment). As such, this Defendant is jointly and severally liable to Plaintiff pursuant to 42 U.S.C. § 1983 for compensatory monetary damages.

89.   The acts and omissions of Defendant Taylor, deprived Plaintiff of his substantive rights pursuant to the  4th (right to be free from excessive force) and the 14th Amendment (liberty interest, bodily integrity, illegal and unwarranted arrest, illegal and unwarranted imprisonment), and as such this Defendant is jointly and severally liable to Plaintiff pursuant to 42 U.S.C. § 1983 for compensatory monetary damages.

## IX.  BREACH OF CONTRACT

90.   Plaintiff incorporate by reference all allegations the above related paragraphs with the same force and effect as if herein set forth.

91.   When Plaintiff entered the University of Texas Health Sciences Center, he agreed to follow certain standards of academic proficiency so as to be able to remain at the school.  In return the UTHSC agreed to provide certain academic and non-academic services to Plaintiff, so as to give him the best opportunity for Plaintiff to fulfill his agreement.

92.   The Defendant UTHSC failed to satisfy their agreement with Plaintiff when not providing him academic and non-academic services as provide by their agreement.

93.   Such breach of contract and related failures caused injuries to Plaintiff.

## X.  PROXIMATE CAUSE

94.   Plaintiff incorporate by reference all allegations the above related paragraphs with the same force and effect as if herein set forth.

95.   Each and every, all and singular of the foregoing acts and omissions, on the part of the University of Texas Health Sciences Center-School of Dentistry Defendant, and Defendants Valenza and Taylor taken separately and/or collectively, both jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XI. RATIFICATION

96.     Plaintiff incorporates by reference all the above related paragraphs, as if fully set forth.

97.     The University of Texas Health Sciences Center-School of Dentistry Defendant ratified the

acts, omissions and customs of all school administrators, educators, personnel and staff.

98.     As a result the Defendant is responsible for the acts and omissions of all school

administrators, educators, personnel and staff, and their agents.

## XII.  DAMAGES

99.     Plaintiff incorporates by reference all the above related paragraphs, as if fully set forth.

100.    As a direct and proximate result of the all the Defendants' conduct, jointly and severally,

Plaintiff has suffered injuries and damages, which he may seek compensation thereby, all

within the jurisdictional limits of this court, including but not limited to the following:

   a.     Reasonable medical care and expenses in the past. These expenses were incurred by
          the subject of this lawsuit, for the necessary care and treatment of the injuries
          resulting from the accident complained of herein and such charges are reasonable and
          were usual and customary charges for such services in Harris County, Texas;

   b.     Mental anguish in the past;

   c.     Mental anguish in the future;

   d.     Reimbursement of all tuition;

   e.     Loss of past opportunity;

   f.     Loss of future opportunity; and

   g.     Lost wages.

101.    By reason of the above, the subject of this lawsuit, Plaintiff has suffered losses and damages

in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.

### XIII.  ATTORNEY FEES

102.   Plaintiff incorporates by reference all the above related paragraphs, as if fully set forth.

103.   It was necessary for Plaintiff to hire the undersigned attorneys to file this lawsuit.  Upon

judgment, Plaintiff is entitled to an award of attorney fees and costs under 29 U.S.C. § 794a,

as well as pursuant to the ADA and 42 U.S.C. § 2000d *et seq*. and related to civil rights

violations pursuant to Section 1988 of the Civil Rights Acts.

### XIV.  PUNITIVE DAMAGES

104.   Plaintiff incorporates by reference all the above related paragraphs, as if fully set forth.

105.   Review of the acts and omissions of the individual Defendants, Valenza and Taylor, evidence

that they have been consciously indifferent, deliberately indifferent, and acted with wanton

disregard to the rights of Plaintiff Tapp and are liable to him for Punitive Damages.

### XV.  STATUTE OF LIMITATIONS

106.   Plaintiff incorporates by reference all the above related paragraphs, as if fully set forth.

107.   Plaintiff reasonably believes that Defendant UTHSC will claim that all or part of the factual

underpinnings of Plaintiffs causes of action fall outside an operative *Statutes Of Limitation.*

108.   Plaintiff reasonably believes that this affirmative defense can and should be rejected,

including but not limited to any and all of the following tolling theories:

    a.      Continuous Violation Theory;

    b.      Equitable Estoppel;

    c.      Misrepresentation;

    d.      Fraudulent Concealment;

    e.      Discovery; and

    f.      Duress.

109.   Plaintiff reasonably believes that any affirmative defense based upon a two-year limitations

period should be rejected upon the school's failures to adhere to their own policies, procedures, failure to investigate a complaint, writings and contractual agreement with Plaintiff, such agreements and duties controlled by a four year limitations period.

## XV.  DEMAND FOR JURY TRIAL

110.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, in the manner and particulars noted above, and in an amount sufficient to fully compensate him for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Section 504, the ADA and 42 U.S.C. § 2000d *et seq*., and 42 U.S.C. §1988, *et seq*.,  together with pre- and post-judgment interest, and court costs expended herein, and for such other relief as this Court in equity, deems just and proper, including but not limited to readmission to the program.

Respectfully submitted,
Cirkiel & Associates, P.C.


/s/  Martin J. Cirkiel
By:  Martin J. Cirkiel, Esq.
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]
Texas Bar No. 00783829
Souther District Fed. ID# 21488
ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

This is to certify that on this the 28th day of November 2011, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic filing system of the Court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means:

Honorable Mishell B. Kneeland, Attorney
Texas Bar No. #24038256
Southern District Federal ID #313250
Assistant Texas Attorney General
Post Office Box 12548
Capitol Station, Austin
Texas 78711-2548
(512) 463-2120 [Telephone]
(512) 320- 0667 [Facsimile]

/s/ Martin J. Cirkiel