IN THE UNITED STATE'S DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEPHEN TAPP, § | |
|     Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 4:11-CV-02971 |
| § | |
| UNIVERSITY OF TEXAS HEALTH § | |
| SCIENCES CENTER AT HOUSTON- § | |
| SCHOOL OF DENTISTRY, DR. JOHN A. § | |
| VALENZA, D.D.S., DEAN, AND SERGEANT § | |
| J. TAYLOR, BOTH INDIVIDUALLY § | |
|     Defendants § | |

**PLAINTIFF'S LATE RESPONSE TO UT HEALTH'S MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF**

COMES NOW, Stephen Tapp, Plaintiff herein, and files this, *Plaintiff's Late Response to UT Health's Motion to Dismiss and Brief in Support* Thereof, and in support thereof would show the Court the following:

**I. PROCEDURAL RESUME**

1.    On August 11, 2011 Plaintiff filed his *Original Complaint*.

2.    Shortly thereafter and on October 11th, the University Of Texas Health Science Center ("UT HSC") Defendant, filed their *Motion To Dismiss* (DE# 3). This pleading by the UT HSC Defendant significantly addresses, among other things, the jurisdictional issues related to the statute of limitations and Eleventh Amendment Immunity.

3.    Shortly thereafter, and on or about November 1st, Plaintiff filed his *First Amended Complaint* (DE# 5) adding two Defendants. Just recently, the necessary waivers were received from the Defendants and filed with this Court. Naturally, these two Defendants have not yet answered or filed their own *Motion to Dismiss.*

4.    On November 4th, UT HSC filed their *Amended Motion to Dismiss* (DE# 6) reiterating the

same jurisdictional arguments. Plaintiff's response was due on or about November 25th, the second day of the Thanksgiving holiday.

5. Plaintiff is also counsel in a case pending in the Waco Division of the Western District of Texas. Plaintiff had a pleading requirement in that cause also due on the 25th. Staff for Counsel contacted that Court who advised staff that they were closed on the 25th. This Counsel reasonably but incorrectly believed that the Southern District - Houston Division would also be closed.

6. Plaintiff's Counsel sought leave of Court on the 28th (DE# 7) to file their *Second Amended Complaint* (DE# 8) believing he had satisfied the duty to file a responsive pleading in a timely manner but unfortunately and mistakenly failed to seek an extension of time to file his response to UT HSC *Amended Motion To Dismiss.*

7. On November 30th, UT HSC filed their *Opposition To Plaintiff's Motion For Leave To File Second Amended Complaint.* In this pleading UT HSC argues that the Court should deny Plaintiff's request because it was filed late, meaning it should have been filed on November 25th and not the 28th.

8. While Counsel continues to believe that his filing of the 28th was a simple mistake and should otherwise act to satisfy his responsive pleading requirement, otherwise due on the 25th, nevertheless, he provides this late response to UT HSC"s *Amended Motion To Dismiss* and seeks the Court's permission to enter same..

## II. BRIEF RESPONSE

9. The University of Texas Health Science Center in their *Amended Motion To Dismiss* argues that Plaintiff's claims relative to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and to the Americans with Disabilities Act should be dismissed as it fails to

fall within the limitations period contemplated by law, and ostensibly dismissed pursuant to Fed. R. Civ. P. 12(b)(6). This argument should easily be dismissed as Plaintiff has pled sufficient facts within the limitation period to satisfy this affirmative defense.

10. They also argue that Plaintiff's claim based upon the Americans with Disabilities Act should be dismissed, presumably pursuant to Fed. R. Civ. P. 12(b)(1), because the University has immunity from suit pursuant to the Eleventh Amendment of the United States Constitution. The Defendant is incorrect as current case law connotes that the UT Health Science Center has no such immunity.

11. Because UT HSC arguments are both factually and legally infirm the *Amended Motion to Dismiss* should be denied.

### III. STANDARDS OF REVIEW

A. *Standard for Rule 12(b)(1) Motion to Dismiss*

12. In examining a Rule 12(b)(1) motion, the court may consider matters of fact that may be in dispute. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle Plaintiff to relief. Ramming v. U.S., 281 F.3d 158 (5th Cir. 2001).

B. *Standard for Rule 12(b)(6) Motion to Dismiss*

13. As in a 12(b)(1) Motion, this court may only dismiss this case, pursuant to Fed. R. Civ. P. 12(b)(6), if it determines with certainty that the Plaintiffs cannot prove any set of facts that would allow relief under the allegations in the complaint. Hishon v. Spalding. 469 U.S. 69, 73 (1984); Scanlon v. Texas A & M Univ., 343 F.3d 533, 536 (5th Cir. 2003). Further, all facts averred by the Plaintiffs against are deemed true and correct and the court must

indulge all inferences in their favor. Collins v. Morgan Stanley Dean Whitter, 224 F.3d 496, 498-99 (5th Cir. 2000).

14. Importantly, as UTHSC has attached evidence to its pleading (DE 6-1, Exh. A) it essentially changes the 12(b)(6) motion to one of summary judgment rather than a judgment on the pleadings under Rule 12.

15. Furthermore, and in any case, it is important to be mindful of the strong public policies in place, and especially at this stage of the pleadings that motions to dismiss are viewed with disfavor and rarely granted. Collins 224 F.3d at 498.

16. Last, in the event a claimant has failed to adequately state a claim upon which relief can be granted, before the motion is granted, the plaintiff should be given the opportunity to replead. U.S. ex rel. Adrian v. Regents of Univ. of Ca., 363 F.3d 398, 403 (5th Cir. 2004).

## IV. **FACTUAL RESUME**[1]

17. In August, 2006, Stephen Tapp enrolled at the University of Texas Health Sciences Center at Houston – School of Dentistry. (¶15). In June, 2006, Tapp suffered a concussion and was prescribed medication to deal with the injury, anxiety, and migraine headaches. (¶15).

18. While a student, Franklin was discriminated against due to his disabilities by Associate Professor Dr. Deborah R. Franklin. (¶16-19). In April 2009, Tapp filed a complaint with Associate Clinical Dean Peggy O'Neal but she did nothing. (¶20).

19. On July 23, 2009, Tapp was notified that it was recommended he be dismissed from school. An appeal was set for August 4, 2009.

20. On July 23, 2009, a physician at the UT Student Health Services Center told Tapp not to tell school officials about his disabilities as he believed they would use that information

---

[1]. All citations are to Plaintiff's *First Amended Complaint* (Docket Entry #5)

against Tapp. (¶24). One of Tapp's advisors at school, Dr. Charles Strekfus, also told Tapp not to mention his disabilities to school officials. (¶26).

21. On August 4, 2009, the *Ad Hoc Appeals Committee* upheld Tapp's dismissal. (¶27). On August 4, Tapp provided Dean Valenza with documentation of his medical, mental health, and disability-related issues. (¶28).

22. On August 12, 2009, a letter from Dr. Janet Bond Rexroad and Dr. Linda J. Cordell was provided to Dean Valenza, wherein they note their belief that Tapp can be successful in school with certain accommodations and modification. (¶31).

23. On August 12, 2009, Valenza told Tapp that he would issue his final decision on August 21, 2009. (¶32). That same day, Tapp sought information about the school's Section 504 programs from the school's attorney and on the school's website, but was unable to find any information. (¶33-34). Tapp also contacted Assistant Academic Dean Leslie Roeder that day, informing her that he would be meeting with an attorney to represent him. (¶35).

24. On August 13, 2009, after learning Tapp was seeking legal counsel, Valenza send Tapp a letter upholding his dismissal. (¶36).

25. On December 21, 2010, Tapp met with Dr. Jerry Bouquot, one of his former professors, for advice and counsel. (¶38). Dean Valenza directed two University of Texas System Police Department officers to interrupt the meeting and arrest Tapp for trespassing.

## V. ARGUMENT AND AUTHORITIES

38. Plaintiff filed his Complaint on August 11, 2011 and UT HSC says that his claims are barred by the statute of limitations because his allegations of discrimination based upon disability all occurred by August 11, 2009.

39. First and foremost, as Tapp was a victim of constructive fraud his claim is controlled by the

four-year statute of limitations, *see* Tex. Civ. Prac. & Rem. Code §16.004(a)(b) or would otherwise go back to August 11, 2007, which certainly includes the entire time-period Tapp was at the UT HSC.

40. While generally a claim of fraud requires an intent to deceive, a claim based upon "constructive fraud," has no such requirement. Rather the elements are whether there was a material representation that was false, that a person making the statement knew it was false, that the person induced the Plaintiff to rely upon the representation and the Plaintiff did so. *Sprick v. Sprick*, 25 S.W.3d 715 (Tex. App.- El Paso, 1999), pet denied.

41. In the instant case, there are multiple times that Tapp spoke with UT HSC staff members who advised him to cover up his disability rather than bring it forward so it would be formally addressed by the staff, the Appeals Committee, and the Dean. Specifically when he spoke with the school physician and Dr. Strefkus in July, 2009, both knew that Tapp had a disability, both advised him not to disclose the disability, (which was a material representation which was false), he was knowingly induced by each to reply upon their advice, which he did, all to his detriment. As Tapp was a victim of a constructive fraud, his claim is controlled by a four year limitations period and not a two year period.

42. In a related vein, Tapp was also a victim of fraudulent concealment. This is an equitable doctrine that estops a Defendant from invoking a limitations defense when the behavior of the Defendant plays a role in concealing a cause of action from a litigant. *Raytheon Co. v. Indigo Sys. Corp.*, 653 F.Supp.2d 677 (E.D. Tex. 2009). In the instant case, Tapp filed a complaint with the Associate Dean Peggy O'Neill about Professor Simpson. O'Neill had an absolute duty to investigate or otherwise deal with Tapp's complaint but did not. As her behavior played a role in concealing his cause of action, UT HSC should be estopped from

       relying upon a limitations defense at all, and alternatively should be controlled by the four-year limitations period contemplated by the Tex. Civ. Prac. & Rem. Code §16.004(a)(4).

43. In addition and in the alternative, even if Tapp's claims do not benefit from a four-year limitations period, he nevertheless provided sufficient evidence at this juncture of the proceedings to show certain event of discrimination occurred within the two-year limitations period, meaning that the UT HSC discriminated against him based upon disability, or otherwise retaliated against him for advocating on his own behalf, within the relevant period.

44. For instance after the *Ad Hoc Appeals Committee* upheld the dismissal, Tapp provided Dean Valenza's documentation noting his medical, mental health, and disability-related issues. Other supportive information was provided by Dr. Janet Bond Rexroad, Licensed Psychologist and Linda J. Cordell, M.D., noting their belief that Tapp could be successful but likely would need certain accommodations and modifications.

45. Evidently Dean Valenza relied upon all this information and did not finalize the dismissal before meeting with Tapp on August 12, 2009 and telling him he would take until the August 21 to review the committee recommendations and issue his final decision.

46. Also on the 12th, while Tapp still was not formally removed from the school, Tapp sent an email to the school's attorney, David Jenkins, and searched the school's website attempting to find information on how he learn about the school's Section 504 programs for students with disabilities but never received any such information. Tapp also had contact with Assistant Academic Dean. Leslie Roeder that day. He let her know that he would be meeting with a private attorney to represent him against the school.

47. On the very next day, August 13, after learning Tapp was seeking legal counsel and apparently changing his mind about waiting until the 21st, Dean Valenza sent Tapp a letter confirming his dismissal from the program.

48. On December 21, 2010, Tapp met with one of his former professors, Dr. Jerry Bouquot, for advice and counsel. Dean Valenza directed officers from the *University of Texas System Police Department* to interrupt the meeting and have Tapp detained, arrested and jailed, also an act of discrimination well within the limitations period.

49. For all these reasons and facts noted, Tapp's claim also is not precluded by the two year limitations period, as UT HSC would claim and their *Amended Motion to Dismiss* relying upon limitations should be denied.

   B. *Tapp's ADA claim is not precluded by Eleventh Amendment immunity*

52. UT HSC asks this Court to dismiss Tapp's claim based upon Title II of the ADA because the State has Eleventh Amendment Immunity as to such ADA claims. However, it is well-settled in other circuits that a state university has waived Eleventh Amendment Immunity for claims predicated upon violations of Title II of the ADA. *Ass'n of Disabled Am. v. Florida Int'l Univ.*, 405 F.3d 954 (11th Cir. 2005); *see also Zwick v. Regents of The Univ. Of Mich.*, C.A. #08-60985 (E.D. Mich. April 28, 2008)(Judge Battini goes through exhaustive review of relevant caselaw on the topic).

53. While it may be true that the Fifth Circuit has never ruled that arms of the state like UT HSC have waived their Eleventh Amendment Immunity under Title II, it is equally true that it is an issue of no legal consequence in this circuit. Specifically, in *Bennett-Nelson & Boykin v. La. Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005) the Court noted that because Eleventh Amendment Immunity has validly been abrogated and waived in claims pursuant

to Section 504 of the Rehabilitation Act of 1973, *citing Pace v. Bogalusa*, 403 F.3d 272, 288-267 (5th Cir. 2005), and such rights and remedies are co-extensive with Title II of the ADA, then there was no reason to address the issue. Mr. Tapp reasonably believes that this Court need not address it as well.

## VI. CONCLUSION

26. Therefore, and for all the above, the Court should deny Defendant's *Motion to Dismiss* in total or alternatively in part and in the alternative Plaintiff be given leave to amend accordingly.

## PRAYER

WHEREFORE, Plaintiff prays that Defendant's Motion To Dismiss be denied in its entirety, or alternatively in part, and in the alternative, that Plaintiff be permitted to replead accordingly, and to other such relief that may be awarded, whether it be in law or in equity, or both.

Respectfully submitted,
Cirkiel & Associates, P.C.

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
State Bar No.: 00783829
Fed. ID.# 21488
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com

Greg White
State Bar No. 21329050
400 Austin Avenue, Ste. 103
P.O. Box 2186
Waco, Texas 76703-2186
(254) 717-5728 [Telephone]
(866) 521-5569 [Facsimile]
greg.white@texapplaw.com
**ATTORNEY FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded to the following parties on this 15th day of December, 2011 by Notice of Electronic Filing from the Clerk of the Court:

Mishell B. Kneeland
Darren G. Gibson
Assistant Attorneys General
General Litigation Division -019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 [Telephone]
(512) 320-0667 [Facsimile]
**ATTORNEY FOR DEFENDANTS**

                                                                /s/ Martin J. Cirkiel
                                                                Martin J. Cirkiel