THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEPHEN TAPP, § | |
| § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-11-2971 |
| § | |
| UNIVERSITY OF TEXAS HEALTH § | |
| SCIENCES CENTER AT HOUSTON— § | |
| SCHOOL OF DENTISTRY, *et al.* § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

On August 11, 2011, Stephen Tapp sued the University of Texas Health Sciences Center at Houston ("UTHealth")—School of Dentistry, alleging that his discharge from the school was based on disability discrimination. (Docket Entry No. 1). UTHealth moved to dismiss. (Docket Entry No. 3). Tapp amended his complaint. *See* FED. R. CIV. P. 15(a)(1)(B). This amended complaint, (Docket Entry No. 5), added Dr. John A. Valenza, D.D.S., dean of the dental school, and Sergeant J. Taylor of the University of Texas System Police Department.[1] UTHealth moved to dismiss the claims asserted against it in the amended complaint on the basis of limitations and sovereign immunity. (Docket Entry No. 6). In response, Tapp moved for leave to amend his complaint a second time. (Docket Entry No. 7). UTHealth opposed this motion, primarily on the basis of futility. (Docket Entry No. 11). Tapp filed a reply in support of his motion for leave to amend.

---

[1] Valenza and Taylor recently have been served, (Docket Entry Nos. 18–19); however, they have not yet filed a responsive pleading.

(Docket Entry No. 21).[2]

Based on the amended complaint; the motion, response, and related filings; the record; the statements of counsel at the hearing held on December 16, 2011; and the applicable law, this court grants UTHealth's motion to dismiss the claims brought under the Americans with Disabilities Act and Rehabilitation Act, without leave to amend. Tapp's motion for leave to file the proposed second amended complaint is denied. Tapp may file a new amended complaint against Valenza and Taylor, and against UTHealth asserting only the breach of contract claim, by **January 20, 2012**.

The reasons for these rulings are explained below.

## I.   Background[3]

Stephen Tapp, a licensed nurse, entered UTHealth's School of Dentistry in August 2006. He alleges that a few months before he started dental school, he suffered a concussion and, as a result, had ongoing symptoms of migraine headaches and anxiety. He alleges that "this problem did not interfere with his early success at the dental school." (Docket Entry No. 5, ¶ 15).

Problems at the school began when Tapp enrolled in a mandatory course taught by Dr. Deborah Franklin, an associate professor. (*Id.*, ¶ 16). Tapp alleges that Franklin had a history "of fixating on one or two students each semester," and students with disabilities in particular, "and using almost every opportunity possible to berate them." (*Id.*, ¶¶ 17, 18). According to Tapp, Franklin began repeatedly insulting and intimidating him in class. (*Id.*, ¶ 18). Franklin also allegedly retaliated against Tapp by "purposefully refus[ing] to provide him with enough patients

---

[2]  Tapp also moved for leave to file an untimely response to the motion to dismiss. (Docket Entry No. 22). That motion is granted.

[3]  The factual allegations, which, if nonconclusory, this court must take as true for purpose of the motions to dismiss, come from Tapp's first amended complaint. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

2

to earn the points he needed to make sufficient grades to stay in school." (*Id.*, ¶ 19). Her behavior exacerbated "Tapp's anxiety and other manifestations of his disabilities[.]" (*Id.*, ¶ 21). That led Tapp to seek treatment in January 2009 from the UT Student Health Services Center. The treating physician noted that Tapp should be tested for attention-deficit disorder. Tapp alleges that he did not learn about this note until after his dismissal from the school. (*Id.*).

Tapp brought his complaints to another professor, Dr. C.D. Johnson. Johnson recommended that Tapp file a complaint about Franklin with Peggy O'Neill, the dental school's Associate Clinical Dean. Tapp did so in April 2009, but O'Neill declined to take action. (*Id.*, ¶ 20).

Tapp visited a school therapist on May 27, 2009. The therapist's notes "reflect [Tapp's] concern that Franklin was abusing him in front of classmates and that he was becoming more and more uncomfortable, worried and anxious." (*Id.*, ¶ 22).

On July 23, 2009, Tapp received a written notice of his dismissal from the dental school. (*Id.*, ¶ 23). The notice came in the form of a letter from Dr. Leslie Roeder, the school's Associate Dean for Academic Affairs.[4] (Docket Entry No. 6, Ex. A). In the letter, Roeder told Tapp that "[t]he Third and Fourth Year Dental Student Evaluation and Promotion Committee met on July 23, 2009, to consider your academic and clinical performance." (*Id.*). The Committee considered numerous academic deficiencies, including Tapp's grade of 64 in the Examination, Diagnosis and Treatment Planning Clinic," and his "[f]ailure to meet minimal clinical expectations in" five other courses. (*Id.*). The Committee recommended Tapp's dismissal from the dental school. The letter stated that

---

[4] This letter is attached to UTHealth's motion to dismiss. Ordinarily, a district court may not look beyond the pleadings when deciding a motion to dismiss. *See, e.g.*, 5B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2004). The Fifth Circuit recognizes one limited exception to this rule. When documents "are referred to in the plaintiff's complaint and are central to the plaintiff's claim," a district court may consider those documents when they are attached to the motion to dismiss. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Roeder's letter to Tapp, giving notice of his dismissal from the dental school, satisfies those two requirements.

Tapp was dismissed and had "to cease all activity in the building by 5:00 pm on July 24, 2009." (*Id.*). The letter told Tapp that he could appeal his dismissal to Dr. H. Philip Pierpont, Associate Dean for Student Affairs, "within five business days after receipt of this letter." (*Id.*).

On the same day he received this letter, July 23, Tapp returned to the UT Student Health Services Center. He was diagnosed with Attention Deficit Hyperactivity Disorder and prescribed medication. Tapp alleges that the doctor told him not to reveal the diagnosis to school officials because "the school had a custom to use this type of information against a student." (Docket Entry No. 5, ¶ 24). Later in July, Tapp met with a private psychiatrist, who confirmed the ADHD diagnosis in a letter later provided to the office of Dr. John Valenza, then serving as interim dean of the dental school. (*Id.*, ¶¶ 2, 25).

Tapp made plans to appeal the decision to the school's Ad Hoc Appeals Committee. Before meeting with that committee, he met with his ad hoc advisors. Tapp alleges that one advisor "knew that Tapp ha[d] some disability related concerns but he too specifically told him not to bring them up in the committee meeting," because the school might use that information against him. (*Id.*, ¶ 26).

Tapp met with the Ad Hoc Appeals Committee on August 4. The Committee upheld the dismissal. (*Id.*, ¶ 27). On August 8, Tapp provided copies of letters to Valenza's office documenting his medical, mental health, and disability-related issues. (*Id.*, ¶ 28). On August 12, Tapp provided another letter from two doctors with UT Counseling and Worklife Services. This letter described his January 2009 visit to the UT Student Health Services Center and the physician's notation that Tapp should be tested for ADHD. In the letter, the doctors stated that Tapp needed reasonable accommodations to be successful at school and offered to assist in this effort. (*Id.*, ¶¶

29–31).

Tapp met with Valenza on August 12. Valenza said that he would decide by August 21 whether to uphold the Ad Hoc Appeals Committee's decision to uphold the dismissal. (*Id.*, ¶ 32). Later on August 12, Tapp met with Roeder and told her that he was meeting with an attorney about taking legal action against the school. (*Id.*, ¶ 35). On August 13, Valenza sent Tapp a letter upholding Tapp's dismissal from the school. (*Id.*, ¶ 36).[5]

Tapp originally sued UTHealth on August 11, 2011. (Docket Entry No. 1). In his amended complaint, (Docket Entry No. 5), which is the operative pleading, he alleged that UTHealth violated the Rehabilitation Act and the ADA in dismissing him from the dental school. UTHealth moved to dismiss under Rule 12(b)(6).

## II.     The Legal Standard for a Motion to Dismiss

A complaint may be dismissed when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to withstand a Rule 12(b)(6) motion. *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Facial plausibility "does not require 'detailed

---

[5] The amended complaint outlines the events occurring after Valenza's August 13 confirmation of the dismissal. (*See* Docket Entry No. 5, ¶¶ 37–41). None of these events are relevant to, or otherwise affect, the court's analysis of UTHealth's motion to dismiss.

factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor is facial plausibility "akin to a 'probability requirement'"; rather, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Facial plausibility requires "the plaintiff [to] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A district court also may dismiss a complaint for failure to state a claim if "its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) (en banc).

## III.   Limitations

UTHealth has moved to dismiss the claims against it on the ground that Tapp's Rehabilitation Act and ADA claims are barred by those acts' two-year statute of limitations. (Docket Entry No. 6, at 3–5). Tapp responds that a four-year statute of limitations applies because he was the victim of constructive fraud and fraudulent concealment, (Docket Entry No. 22, ¶¶ 39–42), or, alternatively, even if the two-year statute applies, his complaint was timely because the ultimate injury did not occur until August 13, 2009, when Valenza confirmed Tapp's dismissal from the school. (Docket Entry No. 22, ¶ 47; *see also* Docket Entry No. 23).

A two-year statute of limitations applies to claims brought in Texas under the Rehabilitation

Act and the Americans with Disabilities Act. *See, e.g.*, *Frame*, 616 F.3d at 237.[6] Tapp's argument for the application of Texas's four-year statute of limitations for fraud claims, TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4), is unpersuasive. Tapp has not asserted a fraud claim, either in the operative complaint, (Docket Entry No. 5), or in his proposed second amended complaint, (Docket Entry No. 8). His claims against UTHealth are that it violated his rights under the Rehabilitation Act and the ADA,[7] which have a two-year statute of limitations.

Tapp received notification of the school's dismissal decision on July 23, 2009. He did not file suit until August 11, 2011. Tapp contends that his causes of action did not accrue until August 13, 2009, when Valenza finalized the decision to dismiss him by upholding the Ad Hoc Appeals Committee's decision to sustain the recommendation to dismiss Tapp. This argument also is unpersuasive under the governing case law. The Fifth Circuit, sitting *en banc*, recently restated the principles governing when a cause of action accrues under federal law:

> Absent unusual circumstances . . . , the rule is that accrual occurs when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. In other words, accrual occurs the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.

*Frame*, 657 F.3d at 238 (internal quotation marks and footnotes omitted).

Tapp's claim is that his dismissal from the dental school was based on disability discrimination. Tapp admits that he received notice of the school's decision to dismiss him on July

---

[6] Although neither of the individual defendants have yet moved to dismiss the claims against it, the court notes that the same two-year statute of limitations applies to Tapp's claims brought under 42 U.S.C. § 1983 against Valenza and Taylor. *See, e.g.*, *Whitt v. Stephens Cnty.*, 529 F.3d 278, 282 (5th Cir. 2008).

[7] Additionally, the fact that Texas lengthens the time in which a plaintiff can bring a fraud claim has no effect on the statute of limitations for ADA and Rehabilitation Act claims. "Although we borrow a limitations period from state law, the accrual date of a federal cause of action is a matter of federal law." *Frame*, 657 F.3d at 238.

23, 2009. On that date, Tapp was aware that he had suffered the injury he alleges and had sufficient information to know he had been injured. He had the information he needed to file suit. If the decision resulted from disability discrimination, as Tapp alleges, his injury occurred the day that the decision was made. *See Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998) (citing cases). On July 23, Tapp clearly "was on notice that his [dismissal] might be discriminatory." *Ramirez v. City of San Antonio*, 312 F.3d 178, 182 (5th Cir. 2002). That Tapp did not exhaust his appeals process until August 13 is irrelevant to when his claims accrued. *See Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 552 (7th Cir. 1996) (holding that "discovery of the original act of discrimination, *not* future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run" (citing *Del. State College v. Ricks*, 449 U.S. 250, 258 (1980))). Tapp's ADA and Rehabilitation Act claims against UTHealth are untimely and are dismissed.

## IV.     Leave to Amend

When a plaintiff's complaint fails to state a claim, a district court generally should provide the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case"); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies,

undue prejudice to the opposing party, or *futility of a proposed amendment.*" *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (emphasis added).

Tapp previously filed a motion for leave to file a second amended complaint. (Docket Entry No. 7). Because it is clear on the face of his pleadings that his Rehabilitation Act and ADA claims against UTHealth are untimely, leave to amend those claims would be futile and is denied.

Tapp's proposed second amended complaint also asserts a breach of contract claim against UTHealth. (Docket Entry No. 8, ¶¶ 90–93). Tapp's basis for this claim is that "UTHSC agreed to provide certain academic and non-academic services to Plaintiff, so as to give him the best opportunity for Plaintiff to fulfill his agreement [to follow certain standards of academic performance]." (*Id.*, ¶ 91). Courts recognize breach-of-contract claims in the educational context,[8] but with significant limits. Courts are highly skeptical of such claims when they arise from disputes over academic performance. *See, e.g.*, *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011) ("A plaintiff must do more than allege that the school did not provide a good or quality education. Both [North Carolina and Pennsylvania] require definite and certain terms before a contract can be considered binding." (internal citations omitted)); *Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("New York law does not recognize a claim for educational malpractice, and a student may not seek to avoid this rule by couching such a claim as a breach of contract claim." (internal citation omitted)); *Untermyer v. College of Lake Cnty.*, 284 F. App'x 328, 330 (7th Cir. 2008) (rejecting breach of contract claim in which "the complaint refers to a College catalog excerpt as the basis for this contractual obligation"); *Havlik v. Johnson & Wales*

---

[8] *See, e.g.*, *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007) ("A student's relationship to his university is based in contract.").

9

*Univ.*, 509 F.3d 25, 34, 35 (1st Cir. 2007) (holding that courts interpret contractual terms contained in student handbooks "in accordance with the parties' reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them" and granting the university "some measure of deference in matters of discipline").

Texas law strongly disfavors judicial meddling in academic decisions of the type Tapp challenges:

> When courts are asked to review the substance of which is genuinely an academic decision, they should show great respect for a faculty's professional judgment and may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. This is especially true in cases such as this, where the student is engaged in the study of a highly specialized field and the decision at issue involves the student's performance in a clinical atmosphere where the evaluation is necessarily subjective. Courts are not equipped to meddle in academic decision-making and evaluation of this type. Accordingly, one the exercise of professional judgment is demonstrated on the part of an educational institution, it is generally entitled to judgment as a matter of law.

*Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 357–58 (Tex. App.—San Antonio 1998, pet. denied) (internal quotation marks and citations omitted).

Tapp has not identified any contract language as the basis for his claim of breach. Nor has Tapp hinted at what academic and nonacademic services UTHealth was required to provide and did not, or how that failure caused his dismissal. Under the legal requirements for pleading a breach of contract claim in the academic context and the general standards for sufficient pleading, Tapp's asserted breach of contract claim is deficient. Leave to amend to raise this claim, as presently

pleaded in the proposed second amended complaint, is denied.[9] Because the present record does not permit this court to conclude that amendment would be futile, the dismissal of this claim is without prejudice and with leave to amend, to the extent Tapp has a good-faith basis for amendment to assert this claim.

## V.     Conclusion and Order

UTHealth's motion to dismiss, (Docket Entry No. 6), is granted. Tapp's motion for leave to file the proposed second amended complaint, (Docket Entry No. 7), is denied. Tapp may amend his breach of contract claim against UTHealth consistent with this opinion, and may amend to replead the § 1983 claims against Valenza and Taylor. Tapp's amended complaint must be filed by **January 20, 2012**. If the defendants move to dismiss this second amended complaint, they must do so by **February 17, 2012**.

SIGNED on December 19, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[9] Through his thinly pleaded breach of contract claim, Tapp argues that had UTHealth offered him certain academic and nonacademic services (which he has not identified), he would have performed better in the clinical courses that the Third and Fourth Year Dental Student Evaluation and Promotion Committee listed in recommending his dismissal—and thus would have avoided dismissal. Decisions as to clinical evaluations in professional schools is typically viewed as the type of judicial "meddl[ing] in academic decision-making and evaluation" of a highly specialized field of study that courts should avoid. *Southwell*, 974 S.W.2d at 358.