IN THE UNITED STATE'S DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEPHEN TAPP, § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 4:11-CV-02971 |
| § | |
| DR. JOHN A VALENZA, DEAN OF § | |
| THE UNIVERSITY OF TEXAS HEALTH § | |
| SCIENCES CENTER AT HOUSTON – § | |
| SCHOOL OF DENTISTRY, § | |
| IN HIS OFFICIAL CAPACITY AND § | |
| INDIVIDUALLY § | |
| Defendants, § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND**

COMES NOW, STEPHEN TAPP, (hereinafter referred to as "Plaintiff"), by and through his attorneys of record, complaining of Dr. John A. Valenza, Dean of the University of Texas Health Sciences Center at Houston – School of Dentistry, in his official capacity and individually, and files this his *Second Amended Complaint and Jury Demand* and would respectfully show as follows:

**I. NATURE AND PURPOSE OF THE ACTION**

1. Stephen Tapp was a former student at the University of Texas Health Sciences Center at Houston- School of Dentistry. On December 21, 2010, Tapp was meeting with Dr. Jerry Bouquot, D.D.S., a former professor of Tapp's, to discuss his future educational and professional plans. While meeting with Bouquot, Dr. Valenza, without cause, falsely told the University of Texas Health Sciences Police Department that Tapp was trespassing and instructed two officers to arrest Tapp, and had him handcuffed and transported to jail.

2. Plaintiff brings this action against Dr. Valenza, both in his official and individual

capacities, for the deprivation of his right to liberty without due process pursuant to the Fourteenth Amendment to the Constitution of the United States as contemplated by 42 U.S.C. §1983.

3. He also brings suit against Dr. Valenza, in his individual capacity, for the torts of assault by infliction of bodily injury, assault by offensive physical contact, false imprisonment, and defamation pursuant to Texas state law.

4. For these violations, Plaintiff seeks damages and compensation for the injuries more fully discussed below.

## II. JURISDICTION

5. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §§ 1331 and 1343 because the matters in controversy arise under the laws and the Constitution of the United States.

19. Furthermore, this Court and supplemental jurisdiction over various state and common law claims pursuant to 28 U.S.C. § 1367.

6. Finally, this Court has jurisdiction to award attorneys fees, expert fees, and costs to the Plaintiffs pursuant to 42 U.S.C. § 1988.

## III. VENUE

7. Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs claims occurred in the Southern District of Texas.

## IV. PARTIES

8. Stephen Tapp is an individual who lives at 8383 El Mundo Street, Houston, Texas. He is a person with a disability.

9. Dr. John A. Valenza, D.D.S., is the Dean at the University of Texas Health Sciences Center at Houston- School of Dentistry. At all pertinent times the Defendant Valenza was responsible for the, management and control of all school business within its jurisdiction, including but not limited to the training of administrators, educators and other staff members as the rights, and their commensurate duties, as to students with disabilities. Separate and apart from his position at the UT HSC, he is an individual who is a resident of the State of Texas. While he may be served individually at 6516 MD Anderson Blvd, Houston, Texas 77030 the Assistant Attorney General for the State of Texas, the Honorable Darren G. Gibson, General Litigation Division, P.O. Box 12548, Capitol Station, has accepted service.

## V. STATEMENT OF FACTS

10. Stephen Tapp has been a licensed nurse since June of 2000, but wanted to fulfill his dream of becoming a dentist.

11. In June of 2006, he suffered a concussion and since that time has had to deal with the injury, migraine headaches and anxiety. He was prescribed psychoactive medications for his medical and emotional needs.

12. He entered the University of Texas Health Sciences Center-School of Dentistry in August of 2006. At that time, Plaintiff signed documents agreeing to follow certain standards of academic proficiency so as to be able to remain at the school. In return, the UTHSC agreed, both formally and informally, to provide Plaintiff certain academic and non-academic services to Plaintiff so as to give him the best opportunity to fulfill his pledge and agreement.

13. Importantly, his medical problems did not interfere with his early success at the dental

school. In fact, he earned an 88 on the National Board Exam, Part One. His grade average was 88. His class attendance was regular and his clinic attendance as of January of 2009 was 99%.

14. The record would reflect Tapp also assisted and volunteered at about twice the rate of other students at the *Periodontal Surgery Clinic*. Tapp was also a regular at the *Ben Taub General Hospital Clinic*. He also volunteered at the *UT Dental Branch Smile Days* and treated patients on the *Free Dental Mission Events* in Houston.

15. He even presented some of his research at the *American Dental Research Conferences* in both 2008 and 2009. In fact, he won second place at the ALD International Laser Conference in Las Vegas in 2009.

16. Tapp was well on the way to becoming a very successful dentist until he was required to take a class with Dr. Deborah R. Franklin, an Associate Professor at the Dental School.

17. Evidently Franklin has a pattern and practice of fixating on one or two students each semester and using almost every opportunity possible to berate and harass them. It is further well-known that she will often fixate on a person for this purpose because that person has an observable emotional or mental disability. In the prior year, Franklin had ostracized another dental student, a C. Kimball (now a licensed Dentist), who also had an observable disability, Attention Deficit Hyperactivity Disorder.

18. During that year, Franklin also vented her *animus* against Mr. Vu Chau, a student who also had an observable mental health disability. He was later dismissed from the school.

19. Whether it was Tapp's observable anxiety in dealing with stress, his delayed responses to verbal cues, his problems with organizing his thoughts in her class, his similarities to these other students, or some other manifestation of his ongoing and emerging emotional

disability, Franklin missed no opportunity to loudly upbraid and intimidate Tapp in front of others.

20. She clearly regarded him as a student with a disability. In fact, on one occasion she warned him and said "Don't you be like ..." the student from the previous year. On another occasion, in front of other students, she chased him down the hall screaming at him and also pushed him.

21. Not only did she discriminate against Tapp based upon his disability, she retaliated against him as well. For instance, she purposefully refused to provide him with enough patients to earn the points he needed to make sufficient grades to stay in school.

22. In fact, her outbursts were well-known to other faculty members. For instance, Dr. C.D. Johnson prompted that Tapp file a complaint about Franklin with the Associate Clinical Dean, Peggy O'Neill. He did so in April of 2009, but she refused to intervene. The Complaint was never investigated.

23. It is no wonder that Tapp's anxiety and other manifestations of his disabilities became exacerbated during this period.

24. In January of 2009, Tapp went to the UT Student Health Services Center for treatment of these conditions. While there, the physician was concerned and put a notation in the medical record that Tapp should "Plan to schedule a neuropsychology test for ADD." Unfortunately, Tapp never learned of this notation, and was not able to discover this important fact until after he was dismissed from the school and attempted to access his medical records.

25. On May 27, 2009, Tapp visited his therapist at the student center. The notes reflect the therapist's concern that Professor Franklin was abusing Stephen in front of classmates. The

notes also reflect the concern that Stephen was becoming more and more uncomfortable, worried and anxious.

26. On July 23, 2009, Tapp received a letter from Leslie Roeder, DDS, MS, Associate Dean, giving him notice that the "Student Evaluation And Promotion Committee" had met and it was recommended he be dismissed from the school. The Committee failed to consider Tapp's mental health condition when making this recommendation. In a related vein, the Committee failed to consider provide Tapp any modification or accommodation so that he could remain at the school.

27. Also on July 23, Stephen returned to the Health Center and asked about his medical condition. He received a diagnosis of *Attention Deficit Hyperactivity Disorder* ("ADHD"), and medication was prescribed. Nevertheless, the physician told Tapp not to communicate this information to school officials as he believed such information would be used against Tapp. The doctor evidently knew that the school had a custom and practice to use this type of information against a student.

28. In any case, Tapp was given the option to appeal the decision. He did so and an *Ad Hoc Appeals Committee* was set for August 4, 2009.

29. Also during this period, and in late July, Tapp consulted with a private psychiatrist, Dr. Ajinder S. Dhatt, M.D. He too confirmed the diagnosis of ADHD, Type 2 and prescribed medications. He wrote a letter with his finding that Tapp later provided to the Dean's office.

30. Tapp spoke with his *Ad Hoc* Advisors prior to the meeting. One Professor, Dr. Charles Strekfus, D.D.S., knew that Tapp has some emotional disability related concerns but he too specifically told him not to bring them up in the committee meeting. Stefkus evidently

knew what others has also stated, that the UTHSC-Dental School had a custom to use this information against a student.

31. On August 4, 2009, he met with the *Ad Hoc Appeals Committee*. Deborah R. Franklin was at the session and was extremely vehement and caustic in her support for dismissal. The Committee upheld the dismissal. This Committee failed to consider Tapp's mental health condition when making this recommendation. This Committee also failed to consider any modification or accommodation so Tapp could remain at the school.

32. Plaintiff reasonably believes that the Committee was not careful and deliberate when making its decision. Rather, the Committee was arbitrary in its review of the facts, discounting all evidence of disability.

33. On August 8, 2009, Tapp provided Dean Valenza's office copies of letters noting his medical, mental health and disability related issues.

34. On August 12, 2009, Dr. Janet Bond Rexroad, EdD, Licensed Psychologist, and Linda J. Cordell, M.D., both with the *UT Counseling & Worklife Services*, wrote and signed a letter directed to Dr. Charles Streckfus, D.D.S., which was also provided to the Dean's Office.

35. Their letter to Dr. Streckfus noted that Tapp had seen a therapist at the center for an intake who referred him for a psychiatric evaluation. After that consult, he was referred to a psychologist for a screening for *Attention Deficit Hyperactivity Disorder*. Based upon both these evaluations, he was prescribed medication to address anxiety and attention related issues.

36. In their note of the 12th, both Rexroad and Cordell noted they believed Tapp to have the requisites to be successful but likely would need certain accommodations and modifications. Specifically, that he should get extra time and have a separate room during

examinations and have the opportunity with regular meeting with staff to address any issues of concern. They both voiced their support for Tapp and volunteered to be of assistance to further this effort.

37. Tapp met with Valenza, also on the 12th. Valenza told Tapp he would take until the August 21st to review the committee recommendations and issue his final decision.

38. Also on the 12th, Tapp sent an email to the school's attorney, David Jenkins, attempting to find information on how he could learn about the school's Section 504 programs for students with disabilities.

39. Tapp also looked on the school's website for such 504 information but none of the links were functioning.

40. Tapp also had contact with Assistant Academic Dean Leslie Roeder that day. He let her know that he would be meeting with a private attorney to represent him against the school based upon his concerns he was a victim of discrimination based upon disability.

41. On the very next day, Dean Valenza sent Tapp a letter upholding the decisions and confirming his dismissal from the program. In the letter, Tapp was directed to cease all activity and return any school-related items within five (5) days. Apparently, Valenza changed his mind about waiting until the 21st to make a decision after learning Tapp was seeking legal counsel and Section 504 accommodations.

42. On September 11, 2009, Tapp, through his attorney, filed a complaint with the school which was directed to Dr. Roeder. It was later forwarded to the school's compliance office. The Compliance Officer informed Tapp an investigation would follow but only if Tapp waived his right to have his counsel present. As Tapp refused to do so, this complaint also was never fully investigated.

43. After he was dismissed from the Dental School, Tapp was compelled to plan for his educational and professional future. Not surprisingly, he turned to one of his former mentors and professors, Dr. Jerry Bouquot, for advice and counsel. Tapp called his office, spoke with his secretary and made necessary arrangements to meet him on December 21, 2010, well over a year after his dismissal from the school.

44. While peacefully meeting in his former professor's office, and without just cause, two officers, S. Beltran and J. Taylor from the *University of Texas System Police Department,* interrupted the meeting. Taylor detained and arrested Tapp, causing Tapp physical pain when handcuffing him. Taylor then transported Tapp to the Harris County Jail where he was charged with trespassing. Tapp was released from jail the next day. He had to retain an attorney. Later the charges were dismissed.

45. The police officers had been instructed by Defendant Valenza to arrest Tapp. Valenza falsely told the officers that he had sent Tapp a letter warning him that if he came on campus, he would be arrested for trespassing.

46. Tapp experienced emotional distress as well as personal and public embarrassment due to both intervention by Valenza, the UT HSC Police and later by his arrest and false imprisonment at the local jail.

47. Tapp now has an arrest record which is public. It inhibits his ability to gain employment as a licensed nursing professional and relegates him to reduced job opportunities. He is attempting to have his records expunged but the UT HSC staff in charge of signing the appropriate expunction documents, working under Defendant Valenza, continue to refuse to do so. Tapp reasonably believes that this failure is in retaliation for his previous complaints and this lawsuit.

## VI. CLAIMS PURSUANT TO THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

48. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

49. Defendant, acting under color of law, had Plaintiff arrested and jailed without cause, thereby depriving Plaintiff of his liberty without due process, thereby violating the Fourteenth Amendment to the Constitution of the United States, for which Defendant is liable pursuant to 42 U.S.C. §1983.

## VII. ASSAULT BY INFLICTION OF BODILY INJURY

50. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

51. Defendant directed Officer Taylor to arrest Plaintiff, intentionally, knowingly and recklessly causing Officer Taylor to make contact with Plaintiff, immediately and directly resulting in bodily injury to Plaintiff, for which Defendant is liable to Plaintiff under the Texas common law tort of assault by infliction of bodily injury.

## VIII. ASSAULT BY OFFENSIVE PHYSICAL CONTACT

52. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

53. Defendant directed Officer Taylor to arrest Plaintiff, intentionally and knowingly causing Officer Taylor to make contact with Plaintiff, a contact which Defendant knew or reasonably should have believed that Plaintiff would regard as offensive or provocative, for which Defendant is liable to Plaintiff under the Texas common law tort of assault by offensive physical contact.

## IX. FALSE IMPRISONMENT

54. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

55. Defendant directed Officer Taylor to arrest Plaintiff, willfully detaining Plaintiff without Plaintiff's consent and without legal authority or justification, for which Defendant is liable to Plaintiff under the Texas common law tort of false imprisonment.

## X. DEFAMATION

56. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

57. Defendant, a non-media defendant, falsely told Officer Taylor that Plaintiff, a private figure, was trespassing, a crime punishable by imprisonment under Texas law, a private statement constituting slander per se, for which Defendant is strictly liable to Plaintiff under the Texas common law tort of defamation.

## XI. PROXIMATE CAUSE

58. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

59. Each and every, all and singular of the foregoing acts and omissions, on the part of the Defendant constitute a direct and proximate cause of the injuries and damages set forth herein.

## XII. RATIFICATION

60. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

61. Defendant directed, aided, encouraged, and ratified the acts of Defendant Taylor and as a

result, Defendant is responsible for the acts of Officer Taylor.

## XIII. DAMAGES

62. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

63. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered injuries and damages, which he may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to the following:

     a. Physical pain in the past;

     b. Mental anguish in the past;

     c. Mental anguish in the future;

     d. Stigma based upon having an arrest record;

     e. Loss of professional opportunities due to having an arrest record;

     f. Out-of-pocket expenses incurred for hiring an attorney to defend against the assault charge,

     g. Out-of-pocket expenses for hiring an attorney to help in the expunction of his criminal arrest records;

     h. Out-of-pocket attorney fees and costs, as well future as future attorney fees and costs related to representation in this lawsuit; and

     i. By reason of the above, the subject of this lawsuit, Plaintiff has suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.

## XIV. ATTORNEY FEES AND COSTS

64. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

65. It was necessary for Plaintiff to hire the undersigned attorneys to file this lawsuit. Upon judgment of Plaintiff's claims pursuant to 42 U.S.C. §1983, Plaintiff is entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §1988.

66. Upon judgment of Plaintiff's tort claims, Plaintiff is entitled to an award of all taxable court costs pursuant to Tex. R. Civ. P. 131.

## XV. PUNITIVE AND EXEMPLARY DAMAGES

67. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

68. A review of the acts and omissions of the Defendant evidences that he was consciously indifferent, deliberately indifferent, and acted with wanton disregard to the rights of Plaintiff and is liable to him for Punitive Damages pursuant to 42 U.S.C. 1983.

69. A review of the acts and omissions of the Defendant evidences that he acted with malice and gross negligence toward Plaintiff and is liable to him for Exemplary Damages for the torts of assault by infliction of bodily injury, assault by offensive physical contact, false imprisonment, and defamation pursuant to Tex. Civ. Prac. & Rem. Code §41.003.

## XVI. DEMAND FOR JURY TRIAL

70. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, in the manner and particulars noted above, and in an amount sufficient to fully compensate him for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to 42 U.S.C. §1988, together with pre- and post-judgment interest, and court costs expended herein, and for such other relief as this Court in equity, deems just and proper, including but not limited to readmission to the program.

Respectfully submitted,

Cirkiel & Associates, P.C.

 /s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com
Texas Bar No. 00783829
Southern District Fed. ID# 21488

Greg White
State Bar No. 21329050
P. O. Box 2186
Waco, Texas 76703
(254) 717-5728 [Telephone]
(866) 521.5569 [Facsimile]
greg.white@texapplaw.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded to the following parties on this 20th day of January, 2012 by Notice of Electronic Filing from the Clerk of the Court:

Darren G. Gibson, Esq.
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 [Telephone]
(512) 320-0667 [Facsimile]

**ATTORNEY FOR DEFENDANT VALENZA**

              /s/ Martin J. Cirkiel