**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STEPHEN TAPP, | § | |
| *Plaintiff*, | § | Civ. Action No. 4:11-cv-02971 |
| | § | |
| v. | § | |
| | § | |
| DR. JOHN A. VALENZA, DEAN OF | § | |
| THE UNIVERSITY OF TEXAS | § | |
| HEALTH SCIENCE CENTER AT | § | |
| HOUSTON – SCHOOL OF | § | |
| DENTISTRY, IN HIS OFFICIAL | § | |
| CAPACITY AND INDIVIDUALLY | § | |
| *Defendants*. | § | |

_____

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**

_____

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense
Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

DARREN G. GIBSON
Attorney-In-Charge
Texas Bar No. 24068846
Southern District No. 1041236
Assistant Attorney General
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

**ATTORNEYS FOR DEFENDANT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.      NATURE AND STAGE OF PROCEEDINGS .............................................. 1

II.     STATEMENT OF THE ISSUES .................................................................... 2

III.    SUMMARY OF THE ARGUMENT .............................................................. 4

IV.     ARGUMENT .................................................................................................. 4

  A.  Dr. Valenza In His Official Capacity Is Immune From Section 1983 Claims. .................. 4

  B.  Dr. Valenza In His Official Capacity Is Not A "Person" Who Can Be Liable Under
      Section 1983. ....................................................................................................... 6

  C.  Dr. Valenza In His Individual Capacity Is Protected By Qualified Immunity. .................. 7

  D.  Dr. Valenza Is Immune In His Official Capacity From Plaintiff's Tort Claims .............. 10

  E.  Plaintiff's Tort Claims Against Dr. Valenza In His Individual Capacity Are Barred By
      Section 101.106(f) Of The Texas Tort Claims Act .............................................. 11

V.      CONCLUSION ............................................................................................. 15

CERTIFICATE OF SERVICE .......................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ABC Arbitrage Pls. Group v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ................................................................. 3

*Alcala v. Texas Webb County*,
  620 F. Supp. 2d 795 (S.D. Tex. 2009) ...................................................10

*Anderson v. Bessman*,
  --- S.W.3d ---, 2011 WL 5429069 (Tex. App.-Houston [1st Dist.] 2011, no pet.)...............13, 14

*Atteberry v. Nocona Gen. Hosp.*,
  430 F.3d 245 (5th Cir. 2005) ...................................................................8

*Bader v. State*,
  15 S.W.3d 599 (Tex. App.-Austin 2000, pet. ref'd)...................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................ 3

*Benton v. U.S.*,
  960 F.2d 19 (5th Cir. 1992) ..................................................................... 3

*Bosier v. Gila Group & Mun. Services Bureau*,
  No. A-07-CA-888 LY, 2008 WL 4279928 (W.D. Tex. Sep. 12, 2008) ......................9

*Burkett v. City of El Paso*,
  513 F. Supp. 2d 800 (W.D. Tex. 2007).................................................10

*Chacko v. Texas A&M Univ.*,
  960 F. Supp. 1180 (S.D. Tex. 1997) .......................................................5

*City of Hempstead v. Kmiec*,
  902 S.W.2d 118 (Tex. App.-Houston [1st Dist.] 1995, no pet.).................11

*City of Lancaster v. Chambers*,
  883 S.W.2d 650 (Tex. 1994)..................................................................13

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ...................................................................9

*Comstock v. Texas A & M Univ.*,
  No. Civ.A. G-01-730, 2002 WL 32113754 (S.D. Tex. July 23, 2002)........................ 6

*Edelman v. Jordan*,
  415 U.S. 651, (1974)........................................................................... 4, 5

*Evans v. City of Marlin, Tex.*,
  986 F.2d 104 (5th Cir. 1993) ................................................................. 6

*Forgan v. Howard Co., Tex.*,
  494 F.3d 518 (5th Cir. 2007) .................................................................10

*Franka v. Velasquez,*
  332 S.W.3d 367 (Tex. 2011)....................................................................................12

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982)...........................................................................................3, 7

*Hughes v. Tobacco Inst., Inc.,*
  278 F.3d 417 (5th Cir. 2001) .................................................................................3

*Iqbal v. Ashcroft,*
  129 S.Ct. 1937 (2009).................................................................................3, 4, 7, 8

*Kane Enters v. MacGregor (USA) Inc.,*
  322 F.3d 371 (5th Cir. 2003) ...............................................................................9

*Kentucky v. Graham,*
  473 U.S. 159 (1985)..............................................................................................5

*Leatherwood v. Prairie View A&M Univ.,*
  No. 01-02-01334-CV, 2004 WL 253275
  (Tex. App.-Houston [1st Dist.] Feb. 12, 2004, no pet.)......................................11

*McClendon v. City of Columbia,*
  305 F.3d 314 (5th Cir. 2002) ................................................................................7

*Mission Consol. Indep. School Dist. v. Garcia,*
  253 S.W.3d 653 (Tex. 2008)..........................................................................11, 12

*Nueces County v. Ferguson,*
  97 S.W.3d 205 (Tex. App.-Corpus Christi, 2002, no pet.) .................................10

*Olivier v. Univ. of Texas Sys.,*
  988 F.2d 1209, 1993 WL 81990 (5th Cir. Mar. 9, 1993)..................................5, 6

*Pastorek v. Trail,*
  248 F.3d 1140, 2001 WL 85921 (5th Cir. Jan. 26, 2001)..................................5, 6

*Pearlman v. City of Fort Worth, Tex.,*
  400 Fed.Appx. 956 (5th Cir. 2010)......................................................................11

*Pearson v. Callahan,*
  555 U.S. 223 (2009)...........................................................................................7, 8

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984) ............................................................................................4, 5

*Perez v. Region 20 Educ. Serv. Ctr.,*
  307 F.3d 318 (5th Cir. 2002) ................................................................................5

*Quarterman v. Hampton,*
  321 S.W.3d 864 (Tex. App.-Houston [1st Dist.] 2010)......................................12

*Ridha v. Tex. A&M Univ. Sys.,*
  Civ. A. No. 4:08-CV-2814, 2009 WL 1406355 (S.D. Tex. May 15, 2009) ................6

*Saucier v. Katz*,
  533 U.S. 194 (2001)............................................................................7, 8, 9

*Spruill v. Watson*,
  157 Fed. Appx. 741 (5th Cir. 2005)................................................................8

*St. Paul Mercury Ins. Co. v. Williamson*,
  224 F.3d 425 (5th Cir.2000) ........................................................................ 3

*Stem v. Ahearn*,
  908 F.2d 1 (5th Cir. 1990) ............................................................................5

*Tex. Dep't of Criminal Justice v. Miller*,
  51 S.W.3d 583 (Tex. 2001).........................................................................10

*U.S. v. Texas Tech Univ.*,
  171 F.3d 279 (5th Cir. 1999) ......................................................................5

*Wernecke v. Garcia*,
  591 F.3d 386 (5th Cir. 2009) ........................................................................7

*West v. Atkins*,
  487 U.S. 42 (1988)...................................................................................... 6

*Will v. Mich. Dept. of State Police*,
  491 U.S. 58 (1989).......................................................................................6

**Statutes**

42 U.S.C. § 1981 ............................................................................................ 5

42 U.S.C. § 1983.....................................................................................1, 2, 5, 6

TEX. CIV. PRAC. & REM. CODE § 101.001(5) ............................................. 13

TEX. CIV. PRAC. & REM. CODE § 101.021 ................................................. 11

TEX. CIV. PRAC. & REM. CODE § 101.057 ................................................. 11

TEX. CIV. PRAC. & REM. CODE § 101.106 ................................................. 12

TEX. CIV. PRAC. & REM. CODE § 101.106(f)............................................. 12

TEX. PENAL CODE § 30.05(a) .......................................................................9

**Rules**

FED. R. CIV. PRO. 8(a)(2) ......................................................................... 4, 8

FED. R. CIV. PRO. 12(b)(1) ........................................................................... 1

Fed. R. Civ. Pro. 12(b)(6) ............................................................................ 1

TO THE HONORABLE LEE H. ROSENTHAL:

Defendant John A. Valenza ("Dr. Valenza"), in both his official and individual capacities, files this Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and, in support thereof, respectfully shows the Court as follows:

## I.   NATURE AND STAGE OF PROCEEDINGS

This case, as currently pleaded, is about the arrest of Plaintiff Stephen Tapp for trespassing on the campus of The University of Texas Health Science Center at Houston ("UTHealth").  Plaintiff filed his original complaint on August 11, 2011, asserting claims against UTHealth under the American with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 related to his dismissal from the School of Dentistry in 2009.  [Dkt. # 1.]  UTHealth then moved to dismiss on limitations grounds and on the basis of sovereign immunity as to the ADA claim.  [Dkt. # 3.]

Before briefing was completed on the motion to dismiss, Plaintiff filed a first amended complaint on November 1, 2011.  [Dkt. #5]  The first amended complaint added Dr. Valenza and Sergeant J. Taylor as individual defendants and asserted claims against them under 42 U.S.C. § 1983 ("Section 1983"), in addition to the original claims against UTHealth.  [*Id.*]  UTHealth again moved to dismiss the claims against it.  [Dkt. # 6.]

In response, Plaintiff filed an opposed motion for leave to file a second amended complaint. [Dkt. # 7.]  In addition to the claims asserted in the first amended complaint, Plaintiff's proposed second amended complaint added a breach of contract claim against UTHealth.  [*Id.*]  UTHealth opposed the motion to amend on futility grounds, since any amendment was futile for the same reasons as asserted in its prior motions to dismiss and because it is immune from breach of contract claims.  [Dkt. # 11.]

On December 16, 2011, the Court heard argument on the pending motions.  In the memorandum and order that followed, the Court dismissed the ADA and Rehabilitation Act claims against UTHealth as untimely, without leave to amend.  [Dkt. # 24 at 6-8.]  The Court ordered Plaintiff to file an amended complaint against Dr. Valenza and Sergeant Taylor, who had not yet responded to Plaintiff's first amended complaint or his motion to amend.  [*Id.*][1]

Plaintiff then filed his second amended complaint on January 20, 2012.  [Dkt. # 26.]  This motion responds to the second amended complaint as the operative pleading in this case.

In his second amended complaint, Plaintiff alleges that Dr. Valenza, as Dean of the School of Dentistry, improperly instructed campus police to arrest Plaintiff while he was on campus visiting a former professor in December 2010.  (Sec. Am. Complt. ¶¶ 1, 44-45.)  Based on this allegedly improper arrest, Plaintiff asserts claims against Dr. Valenza in both his individual and official capacities for alleged due process violations under 42 U.S.C. § 1983 ("Section 1983), as well as various tort claims.  (*Id.* ¶¶ 48-53.)  Plaintiff no longer asserts any claims against Sergeant Taylor or UTHealth.

Plaintiff seeks compensatory damages, punitive damages, attorney fees, and costs.  (*Id.* ¶¶ 58-65.)  In response, Dr. Valenza now files this motion to dismiss the claims in Plaintiff's second amended complaint.

## II.    STATEMENT OF THE ISSUES

Dr. Valenza moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The same standard applies to a motion to dismiss under either rule – namely, a claim is subject to dismissal if "it appears certain that the plaintiff cannot prove any set of facts in

---

[1] The Court also allowed Plaintiff to assert a breach of contract claim in his amended pleading [Dtk. # 24 at 9-11],

support of her claim which would entitle her to relief." *See Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992). Thus, "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n. 8 (5th Cir.2000)). While the Court must accept the specific factual allegations in the pleadings as true when deciding a motion to dismiss, *Hughes*, 278 F.3d at 420, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Therefore, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal under Rule 12(b)(6)." *ABC Arbitrage Pls. Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002).

Furthermore, a plaintiff asserting Section 1983 claims against an individual must plead sufficient facts to defeat defendant's qualified immunity. The doctrine of qualified immunity protects government officials sued in their individual capacity under Section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Indeed, the Supreme Court has recognized that qualified immunity is not merely an affirmative defense, but also "a limited entitlement not to stand trial or face the other burdens of litigation." *Iqbal v. Ashcroft*, 129 S.Ct. 1937, 1946 (2009) (quotations omitted). In *Iqbal v. Ashcroft*, the Supreme Court made it clear that, to satisfy Rule 8 pleading requirements to defeat qualified immunity, a plaintiff asserting Section 1983 claims "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 1948. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

---

although Plaintiff has not asserted any such claim in his second amended complaint.

alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 1950. (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    SUMMARY OF THE ARGUMENT

Because Plaintiff does not state whether he is bringing each of his claims against Dr. Valenza in his official or individual capacity, Dr. Valenza will respond to each of Plaintiff's claims as if brought against Dr. Valenza in both his official and individual capacities.

Dr. Valenza moves to dismiss the Section 1983 claims brought against him in his official capacity on two separate grounds.  First, this Court lacks jurisdiction to hear Plaintiff's Section 1983 claim against Dr. Valenza in his official capacity, as he is protected from suit by sovereign immunity and the Eleventh Amendment.  Second, even if this Court had jurisdiction, Plaintiff has failed to state a claim because state officials named in their official capacity are not "persons" subject to liability under Section 1983.

Plaintiff has also failed to allege a plausible Section 1983 claims against Dr. Valenza in his individual capacity because the facts alleged (combined with the documents incorporated by reference) make it clear that Dr. Valenza is protected by qualified immunity from Plaintiff's claims.

As to the tort claims brought against Dr. Valenza in his official capacity, those claims are barred by sovereign immunity.  In addition, Plaintiff's tort claims brought against Dr. Valenza are barred by Section 101.106 of the Texas Tort Claims Act.

## IV.    ARGUMENT

### A.    Dr. Valenza In His Official Capacity Is Immune From Section 1983 Claims.

The long-standing doctrine of sovereign immunity and the Eleventh Amendment deprive a federal court of jurisdiction to hear a suit against a state unless sovereign immunity is expressly waived. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-102 (1984); *Edelman v.*

*Jordan*, 415 U.S. 651, 662-68 (1974).  It is well settled that the protections afforded by sovereign immunity and the Eleventh Amendment apply to state agencies and state universities.  *See Pennhurst*, 465 U.S. at 100; *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) ("The state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state."); *U.S. v. Texas Tech Univ.*, 171 F.3d 279, 289 n.14 (5th Cir. 1999) ("The Eleventh Amendment cloaks Texas Tech University and Texas Tech University Health Sciences Center with sovereign immunity as state institutions.").  Similarly, the protections afforded by sovereign immunity and the Eleventh Amendment also apply to state officials named in their official capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[the Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *Pastorek v. Trail*, 248 F.3d 1140, 2001 WL 85921, at *3 (5th Cir. Jan. 26, 2001) ("the Eleventh Amendment bars appellant's [Section 1983] claims against [Louisiana State University officials] in their official capacities."); *Olivier v. Univ. of Texas Sys.*, 988 F.2d 1209, 1993 WL 81990, at *1 (5th Cir. Mar. 9, 1993) (affirming dismissal of Section 1983 claims against university officials; "Suits against the regents in their official capacity are barred by the eleventh amendment.").

In this case, Plaintiff asserts a Section 1983 claim against Dr. Valenza in his official capacity as Dean of UTHealth's School of Dentistry.  (Sec. Am. Complt. ¶¶ 48-49.)  However, there is no waiver of the state's sovereign immunity found in Section 1983.  *See Stem v. Ahearn,* 908 F.2d 1, 4 (5th Cir. 1990) ("nor has state sovereign immunity been eviscerated by Congress with the passage of section 1983."); *Chacko v. Texas A&M Univ.*, 960 F. Supp. 1180, 1198 (S.D. Tex. 1997) ("Neither §1981 nor §1983 contains a congressional waiver of a state's eleventh amendment immunity. Consequently, it is apparent that Congress did not intend to abrogate a state's eleventh amendment

immunity under these statutes."). Therefore, Section 1983 claims brought against states, their universities, or university officials sued in their official capacity must be dismissed for lack of subject matter jurisdiction. *See Olivier*, 1993 WL 81990, at *1; *Ridha v. Tex. A&M Univ. Sys.*, Civ. A. No. 4:08-CV-2814, 2009 WL 1406355, at *5 (S.D. Tex. May 15, 2009); *Comstock v. Tex. A&M Univ.*, No. Civ. A. G-01-730, 2002 WL 32113754, at *4 (S.D. Tex. July 23, 2002).

Because Dr. Valenza is protected by sovereign immunity and the Eleventh Amendment in his official capacity, this Court lacks jurisdiction to adjudicate Plaintiff's Section 1983 brought against Dr. Valenza in his official capacity.

B.   <u>Dr. Valenza In His Official Capacity Is Not A "Person" Who Can Be Liable Under Section 1983.</u>

Even if Dr. Valenza were not immune from suit here (which he is), Plaintiff would nevertheless fail to state a cognizable Section 1983 claim against him in his official capacity. In order to prevail on a Section 1983 claim, a plaintiff must prove that (1) a person (2) acting under color of state law (3) subjected the plaintiffs or caused the plaintiffs to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Evans v. City of Marlin, Tex.*, 986 F.2d 104, 107 (5th Cir. 1993); 42 U.S.C. §1983. It is well settled that state officials named in their official capacity are not "persons" for the purposes of Section 1983 liability, and therefore not a proper defendant for such claims. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Pastorek v. Trail*, 248 F.3d 1140, 2001 WL 85921, at *3 (5th Cir. Jan. 26, 2001) ("summary judgment on Appellant's 1983 claims against Trail and Copping in their official capacities was appropriate because they are not 'persons' under section 1983.").

Plaintiff, therefore, fails to state a cognizable Section 1983 claim against Dr. Valenza in his official capacity because he is not a "person" under the statute.

C.      Dr. Valenza In His Individual Capacity Is Protected By Qualified Immunity.

Even if Plaintiff could somehow assert a cognizable Section 1983 claim against Dr. Valenza in his individual capacity, qualified immunity would nevertheless preclude any finding of liability. Qualified immunity works to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Indeed, the Supreme Court has recognized that qualified immunity is not merely an affirmative defense, but also "a limited entitlement not to stand trial or face the other burdens of litigation." *Iqbal*, 129 S.Ct. at 1946 (quotations omitted); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (holding that qualified immunity intended to protect government officials from "the burdens of such pretrial matters as discovery as inquiries of this kind can be peculiarly disruptive of effective government.") (quotations omitted).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court articulated a two-step sequence for resolving government officials' qualified immunity claims. "*Saucier* required that lower courts consider first, whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law, and second, if a violation has been alleged, whether the right was clearly established at the time of the alleged government misconduct." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (internal citations and quotation marks omitted).[2]  "The relevant, dispositive inquiry in determining whether a right is

---

[2] In *Pearson v. Callahan*, the Court reconsidered the *Saucier* procedure, determined that "while the [two-step] sequence ... is often appropriate, it should no longer be regarded as mandatory," and gave lower courts "permi[ssion] to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009).

clearly established [under the second step of the qualified immunity inquiry] is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  The objective reasonableness of an officer's belief that his conduct was lawful is a question of law, not fact.  *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir.2005).

Furthermore, in *Iqbal v. Ashcroft*, 129 S.Ct. 1937 (2009), the Supreme Court made it clear that, to satisfy Rule 8 pleading requirements to defeat qualified immunity, a plaintiff asserting Section 1983 claims "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.* at 1948.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  *Id.* at 1950.  (quoting Fed. R. Civ. P. 8(a)(2)).  In the context of Section 1983 claims relating to allegations of an improper arrest based on insufficient or invalid grounds (such as those here), the state actor is protected by qualified immunity where he did not know that the basis for the arrest was invalid.  *See Spruill v. Watson*, 157 Fed.Appx. 741, 744 (5th Cir. 2005) (affirming dismissal of claims against officer even though arrest based on invalid restraining order).

Here, Plaintiff alleges that Dr. Valenza violated Plaintiff's procedural and substantive due process rights when he "instructed" UT System police officers to arrest Plaintiff for trespass without cause. (Sec. Am. Complt. ¶¶ 45, 49.)  In particular, Plaintiff alleges that Dr. Valenza had "falsely told the officers that he had sent Tapp a letter warning him that if he came on campus, he would be arrested for trespass."  (*Id.* ¶ 45.)  Even assuming for the sake of this motion that Dr. Valenza directed UT police to arrest Plaintiff for trespass, the relevant inquiry here is whether it would have been clear to a reasonable person in Dr. Valenza's position that his conduct of directing campus police to arrest Plaintiff for trespass was *unlawful* given the situation.  *See Saucier*, 533 U.S. at 202.

"The elements of criminal trespass are that: (1) a person, (2) without effective consent, (3) enters or remains on the property or in a building of another, (4) knowingly, intentionally, or recklessly, (5) when he had notice that entry was forbidden or received notice to depart and failed to do so." *Bader v. State*, 15 S .W.3d 599, 606 (Tex. App.–Austin 2000, pet. ref'd); *see also* TEX. PENAL CODE § 30.05(a). Thus, if Dr. Valenza reasonably believed that those elements were met by Plaintiff's conduct, it is impossible for his alleged direction to campus police was unlawful.

Although Plaintiff's complaint incorporates by reference the letter Dr. Valenza sent Plaintiff on August 13, 2009, the complaint fails to mention that the letter expressly instructed Plaintiff to cease any further activities on campus. (Sec. Am. Complt. ¶ 41.) In particular, Dr. Valenza told Plaintiff, "You are to cease all activity in the building immediately upon receipt of this letter and surrender your identification badge."[3] It is clear that Dr. Valenza had instructed Plaintiff that he was forbidden to enter the School of Dentistry following his dismissal. And yet, on December 21, 2010, Plaintiff ignored the express instructions of Dr. Valenza and knowingly entered the School of Dentistry without effective consent. (Sec. Am. Complt. ¶¶ 43-44.)[4] When confronted with this situation, Dr. Valenza allegedly instructed campus police to arrest Plaintiff for trespass. Under the alleged facts, there is simply no basis for concluding that Dr. Valenza's actions were indeed

---

[3] Exh. 1, Letter dated August 13, 2009 from Dean Valenza to Tapp. The August 13, 2009 letter from Dr. Valenza to Plaintiff is incorporated by reference in paragraph 41 of the Second Amended Complaint. When ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider the contents of the pleadings, as well as documents either attached to or incorporated by reference into the complaint. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (district court may consider documents attached to a motion to dismiss referred to in the plaintiff's complaint that are central to the plaintiff's claim); *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("the court may review the documents attached to the motion to dismiss, e.g., the contracts in issue here, where the complaint refers to the documents and they are central to the claim."); *Bosier v. Gila Group & Mun. Services Bureau*, No. A-07-CA-888 LY, 2008 WL 4279928, at *3 n.2 (W.D. Tex. Sep. 12, 2008) ("matters that are attached to a motion to dismiss may be considered if they are 'central to' the plaintiff's claim.").

[4] Although Plaintiff may argue he had consent from Dr. Bouquot to attend a meeting on campus (Sec. Am. Complt. ¶ 43), the complaint also alleges that Dr. Valenza, not Dr. Bouquot, "was responsible or the management and control of all school business within its jurisdiction." (*Id.* ¶ 9.) Thus, Plaintiff, by his own admission, was on notice that he did not have consent to be on campus.

*Defendant's Motion To Dismiss Plaintiff's Second Amended Complaint* 9

unlawful, much less that it should have been clear to Dr. Valenza that his actions were unlawful in light of a purported right for Plaintiff to be on campus.

In short, Plaintiff has failed to plead facts showing that Dr. Valenza, through his own conduct, violated the Constitution, and there is nothing in the complaint suggesting that Plaintiff can defeat Dr. Valenza's qualified immunity.  As such, the Section 1983 claim against Dr. Valenza in his individual capacity should be dismissed.

D.      Dr. Valenza Is Immune In His Official Capacity From Plaintiff's Tort Claims.

Dr. Valenza is also immune from suit for Plaintiff's state-law tort claims asserted against him in his official capacity.  "A Texas governmental unit is generally immune from tort liability unless the legislature has somehow waived immunity."  *Forgan v. Howard Co., Tex.*, 494 F.3d 518, 520 (5th Cir. 2007) (citing *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 586-87 (Tex. 2001)).  Furthermore, it is clear under Texas law that "[p]ersons sued in their official capacity may raise any defense available to the governmental unit, including sovereign immunity."  *Burkett v. City of El Paso*, 513 F. Supp. 2d 800, 824 (W.D. Tex. 2007) (quoting *Nueces County v. Ferguson*, 97 S.W.3d 205, 214-215 (Tex. App.–Corpus Christi, 2002, no pet.)); *see also Alcala v. Texas Webb County*, 620 F. Supp. 2d 795, 801 (S.D. Tex. 2009) ("a suit against government employees in their official capacities is, in all respects, a suit against the State; thus employees sued in their official capacities are shielded by sovereign immunity.") (quotations omitted).  Thus, the State, its governmental units, and its officials named in their official capacities are immune from suit for tort claims except to the extent sovereign immunity is expressly waived.  *Burkett*, 513 F. Supp. 2d at 824.

The Texas Tort Claims Act ("TTCA") waives immunity only for three types of tort claims: (1) claims arising from the operation or use of motor-driven vehicles or equipment; (2) claims caused by a condition or use of tangible personal or real property; and (3) claims arising from

premise defects.  TEX. CIV. PRAC. & REM. CODE § 101.021.  Moreover, the Texas Legislature explicitly excluded intentional torts from any such waiver.  TEX. CIV. PRAC. & REM. CODE §101.057.

Here, Plaintiff's tort claims do not arise from the operation or use of a motor vehicle, the use of real or personal property, or from premises defects.  Rather, Plaintiff's claims arise from a purportedly improper arrest for trespass while he was on UTHealth's campus.  (Sec. Am. Compl. ¶¶ 1, 44-45.)  Moreover, all of Plaintiffs' tort claims – assault, false imprisonment, and defamation – are intentional torts, which are expressly excluded from the limited waiver found in the TTCA.  *See Pearlman v. City of Fort Worth, Tex.,* 400 Fed.Appx. 956, 959 (5th Cir. 2010) (affirming dismissal of assault and false imprisonment claims as outside the waiver in the TTCA); *Leatherwood v. Prairie View A&M Univ.*, No. 01-02-01334-CV, 2004 WL 253275, at *3 (Tex. App.–Houston [1st Dist.] Feb. 12, 2004, no pet.) ("Leatherwood's claim also fails because defamation is an intentional tort, for which the Tort Claims Act does not waive immunity.")  Because there is no waiver in the TTCA for Plaintiff's claims related to an improper arrest, Plaintiff's tort claims against Dr. Valenza in his official capacity should be dismissed.  *See City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.–Houston [1st Dist.] 1995, no pet.) ("The plaintiff does not allege that the arrest was related to the operation or use of a motor vehicle, a premises defect, or the use or misuse of property owned or controlled by the City. Thus, she does not bring her suit within the waiver provisions of the Tort Claims Act.").

E.     Plaintiff's Tort Claims Against Dr. Valenza In His Individual Capacity Are Barred By Section 101.106(f) Of The Texas Tort Claims Act.

The Texas Tort Claims Act includes a strict "Election of Remedies," which requires "a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone."  *Mission Consol. Indep. School Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008); *see also* TEX. CIV. PRAC. & REM. CODE

§ 101.106.  This provision "narrows the issues for trial and reduces delay and duplicative litigation costs."  *Garcia*, 253 S.W.3d at 657.

In particular, Section 101.106(f) applies in suits against a governmental employee (such as this one), and it states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f).[5]  Furthermore, under section 101.106(f), suit "could have been brought" under the TTCA against the governmental entity regardless of whether the TTCA waives immunity from suit for such claims.  *Franka v. Velasquez*, 332 S.W.3d 367, 385 (Tex. 2011); *see also Garcia*, 253 S.W.3d at 659 ("all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be "under [the Tort Claims Act]" for purposes of section 101.106.").  As a result, Section 101.106(f) effectively "foreclose(s) suit against a government employee in his individual capacity" for tort claims "if he was acting within the scope of employment."  *Franka,* 332 S.W.3d at 382.  Such claims must be brought against the state agency, if at all, regardless of whether that entity is immune from such claims.

The question of scope of employment "encompasses two inquiries: whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope

---

[5] Although Dr. Valenza is sued in both his official and individual capacities, it appears that Texas law considers such a suit not to be against both the governmental unit and the individual employee for purposes of Section 101.106(e).  *See Quarterman v. Hampton*, 321 S.W.3d 864, 867-69 (Tex. App.–Houston [1st Dist.] 2010).  Thus, Dr. Valenza will address the tort claims against him in his individual capacity under Section 101.106(f).  Should the Court conclude that Section 101.106(e) applies, Dr. Valenza reserves the right to assert that the tort claims against him should be dismissed pursuant to that section as well.

*Defendant's Motion To Dismiss Plaintiff's Second Amended Complaint* 12

of that employment at the relevant time." *Anderson v. Bessman*, --- S.W.3d ---, 2011 WL 5429069, at *4 (Tex. App.–Houston [1st Dist.] 2011, no pet.).  It is clear from the face of the complaint that Dr. Valenza was acting in the general scope of employment when he allegedly "had Plaintiff arrested and jailed without cause." (Sec. Am. Complt. ¶ 49.) First, Plaintiff admits that Dr. Valenza was Dean of the School of Dentistry at UTHealth "[a]t all pertinent times." (Sec. Am. Complt. ¶ 9.)

Second, the allegedly improper acts fell within Dr. Valenza's scope of employment as Dean of the School of Dentistry.  The Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE § 101.001(5).  Furthermore, "[a]n official acts within the scope of her authority if she is discharging the duties generally assigned to her." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994) (finding that on-duty police officers, pursuing suspect in squad car, did not act outside scope of authority in driving without regard for safety of others).

Here, Dr. Valenza allegedly instructed the UT System police officers to arrest Plaintiff and "falsely told the officers that he had sent Tapp a letter warning him that if he came on campus, he would be arrested for trespass." (Sec. Am. Complt. ¶ 45.)  Communicating with campus police regarding campus safety and directing those police officers to arrest trespassers are actions not of a private individual, but are only actions that can be taken by a university official.  Indeed, Plaintiff even admits that Dr. Valenza was "acting under color of state law" and "was responsible for the management and control of all school business within its jurisdiction." (*Id.* ¶¶ 9, 49.)  Even if Dr. Valenza instructed campus police to arrest Plaintiff based on a personal or improper motive, those

actions would still be within the scope of Dr. Valenza's employment.  *See Bessman*, 2011 WL 5429069, at *5 ("So long as it falls within the duties assigned, an employee's conduct is 'within the scope of employment,' even if done in part to serve the purposes of the employee or a third person.") (citing cases).

In short, the tort claims against Dr. Valenza are based on conduct within the general scope of his employment and could have been brought under the TTCA against UTHealth.[6]  As a result, the tort claims against Dr. Valenza in his individual capacity should be dismissed pursuant to Section 101.106(f).

---

[6] To be clear, UTHealth is immune from Plaintiffs' tort claims for the same reasons that Dr. Valenza in his official capacity is immune, as discussed above.  However, Texas law is clear that all tort claims are considered to be "under" the TTCA, regardless of whether the governmental unit is immune from such claims.  *Franka v. Velasquez*, 332 S.W.3d 367, 385 (Tex. 2011); *Mission Consol. Indep. School Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).

## V.    CONCLUSION

For the foregoing reasons, Dr. Valenza respectfully requests that this Court grant his Motion to Dismiss Plaintiff's Second Amended Complaint, dismiss Plaintiff's claims, order that Plaintiff take nothing by his action, and award such further relief to which Dr. Valenza is entitled, including costs and attorney's fees.

Dated:  February 15, 2012                           Respectfully submitted,

                                                    GREG ABBOTT
                                                    Attorney General of Texas

                                                    DANIEL T. HODGE
                                                    First Assistant Attorney General

                                                    DAVID C. MATTAX
                                                    Deputy Attorney General for Defense
                                                    Litigation

                                                    ROBERT B. O'KEEFE
                                                    Chief, General Litigation Division

                                                    /s/ Darren G. Gibson
                                                    **DARREN G. GIBSON**
                                                    Attorney-In-Charge
                                                    Texas Bar No. 24068846
                                                    Southern District No. 1041236
                                                    Assistant Attorney General
                                                    General Litigation Division
                                                    P.O. Box 12548, Capitol Station
                                                    Austin, Texas 78711-2548
                                                    (512) 463-2120
                                                    (512) 320-0667 FAX
                                                    Darren.Gibson@oag.state.tx.us

                                                    ***ATTORNEYS FOR DEFENDANT***

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the forgoing document was served via the *CM/ECF system* on February 15, 2012, to:

Martin Jay Cirkiel
Cirkiel & Associates, PC
1901 E Palm Valley Blvd
Round Rock, TX 78664-9401
marty@cirkielaw.com
*Attorney for Plaintiff*

/s/ Darren G. Gibson
**DARREN G. GIBSON**
Assistant Attorney General