**IN THE UNITED STATE'S DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| STEPHEN TAPP, | § |
|          Plaintiff, | § |
| | § |
| vs. | § Civil Action No. 4:11-CV-02971 |
| | § |
| DR. JOHN A. VALENZA, D.D.S., DEAN | § |
| OF THE UNIVERSITY OF TEXAS HEALTH | § |
| SCIENCES CENTER AT HOUSTON- | § |
| SCHOOL OF DENTISTRY, INDIVIDUALLY | § |
| AND IN HIS OFFICIAL CAPACITY | § |
|          Defendant. | § |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

COMES NOW STEPEHN TAPP, and file this, his "*Response to Defendant's* (Dr. John A. Valenza, Dean of the University of Texas Health Science Center's ("UT HSC") *Motion to Dismiss Plaintiff's Second Amended Complaint*" (DE # 27) and in support thereof would respectfully show the Court the following:

## I. BRIEF RESPONSE

1.    On August 13, 2009, Stephen Tapp was dismissed from the UT HSC Dental School. At that time, Dean Valenza sent him a letter telling him to "cease all activities in the building and return his identification badge." (DE 27, p. 14, ¶2). On December 21, 2010, well over a year after leaving the dental school, Stephen Tapp asked his former professor from the UT HSC Dental School, Professor Bouquot, if he could visit. Bouquot gave Tapp permission to visit. While sitting peacefully in Bouquot's office, a UT HSC officer apprehended Tapp, handcuffed him and had him jailed, all at the behest of Defendant Valenza.

2.    Tapp brought a constitutional claim pursuant to Section 1983 of the Civil Rights Acts

against Valenza, as well as state and common law claims. Valenza apparently believes that because he is the Dean of the school he has absolute license to intentionally and deliberately violate the Constitutional rights of citizens to enter public buildings, just because he doesn't like that person. While the very able attorneys for the Dean have provided this Court a rather lengthy brief, with over 40 cases cited, none of the cases cited actually help the Dean in his "Qualified Immunity" argument. Of course, this is no surprise, as likely none exists. As such, Defendant's *Motion to Dismiss* should be denied.

## II. <u>STANDARDS OF REVIEW</u>

3.    The Court may only dismiss Tapp's case, pursuant to Fed. R. Civ. P. 12(b)(6), if he fails to provide sufficient facts to support a plausible claim for relief. <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). Further, all facts averred by the Plaintiff against the Defendant are deemed true and correct, <u>Id.</u>, see also <u>Davis v. Monroe Bd. Of Educ.</u>, 526 U.S. 629, 633; 119 S.Ct. 1661, 1666 (1999). A court may only grant a motion to dismiss if it determines with certainty that the Plaintiff cannot prove any set of facts that would allow relief under the allegations in his complaint. <u>Hishon v. Spalding</u>. 469 U.S. 69, 73 104 S.Ct. 2229, 2232 (1984); <u>Scanlon v. Texas A & M University</u>, 343 F3d 533, 536 (5th Cir. 2003). Further, a court must indulge all inferences in the favor of the Plaintiff. <u>Collins v. Morgan Stanley Dean Whitter</u>, 224 F3d 496, 498-499 (5th Cir. 2000).

4.    Importantly, the Defendant has attached evidence to its pleading (DE #27, Exh. A) and asks the Court to consider it in their 12(b)(6) *Motion,* and not convert it into one of summary judgment. <u>Michigan Paytel Jt.Venture v. City of Detroit</u>, 287 F.3rd 527, 533 (6th Cir. 2002). Nevertheless, whether their *Motion* is considered pursuant to Rule 12(b)(6) or

Rule 56 is of no matter, because once the Court reviews the document attached, if nothing else it creates a fact question that can only be resolved at this stage in Plaintiff's favor.

5.   Furthermore and also in a related vein, it is important to be mindful of the strong public policies in place, and especially at this stage of the pleadings, that motions to dismiss are viewed with disfavor and rarely granted. <u>Collins</u> at 498; *see also* Wright & Miller §1357.

6.   Last, and in the event the Court determines that the Plaintiff has failed to adequately state a claim upon which relief can be granted at this time and before the motion is granted with finality, the Plaintiff should be given the opportunity to re-plead. <u>United States ex rel. Adrian v. Regents of University of California</u>, 363 F.3d 398, 403 (5th Cir. 2004).

7.   In addition and in the alternative, the Court should permit Plaintiff to conduct limited discovery on the *Qualified Immunity* issue, as is otherwise be contemplated for instance, by Rule 12(d)(if evidence is presented outside the pleadings Plaintiff should be given "a reasonable opportunity to present all the material that is pertinent to the motion"). In short, since the Defendant has attached a letter the Dean sent to Tapp, Tapp should be given an opportunity to respond after the Court determines whether or not to consider the document. Such a result comports with a strong public policy that liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to define disputed facts and issues and to dispose of claims, <u>Furstenfeld v. Rogers</u>, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002). With all this in mind, Plaintiff proceeds accordingly.

## III. <u>EVIDENCE CONSIDERED</u>

8.   In determining whether or not to grant a Rule 12(b)(6) motion, the allegations in the complaint are primarily examined, though the Court may consider matters of public record,

orders, items appearing in the record of the case and exhibits attached to the complaint, if any. Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017-1018 (5th Cir. 1996). In addition, and it "goes without saying" that any statements made by the Defendant in their own *Motion* may be relied upon by Plaintiff is his response.

## IV. RELEVANT FACTUAL RESUME

9.    On July 23, Tapp, then a student at the UT Health Science Center School of Dentistry, received a letter from Leslie Roeder, Associate Dean, giving him notice that the "Student Evaluation and Promotion Committee" had met and it was recommended he be dismissed from the school. Tapp believed the Committee failed to consider his mental health condition when making this recommendation (DE#26, ¶26).

10.   Tapp was given the option to appeal the decision. He did so and an *Ad Hoc Appeals Committee* was set for August 4th (DE#26, ¶28).

11.   On August 4, he met with the *Ad Hoc Appeals Committee.* Professor Deborah R. Franklin, D.D.S., was at the session and was extremely vehement and caustic in her support for dismissal. The Committee upheld the dismissal. Tapp believes this Committee too failed to consider his mental health condition when making this recommendation. So he decided to have this decision appealed to Dean Valenza (DE#26, ¶31).

12.   On August 8, Tapp provided the Dean copies of letters noting his medical, mental health and disability related issues. It also included letters of support from Professors Rexroad and Cordell noting their belief that Tapp had the requisites to be successful but likely would need certain accommodations and modifications (DE#26, ¶33).

13.   Tapp met with Valenza, on the 12th. Valenza told Tapp he would take until the 21st to

review the committee recommendations, and issue his final decision (DE#26, ¶37).

14.    Also on the 12th, Tapp sent an email to the school's attorney, David Jenkins, attempting to find information on how he could learn about the school's Section 504 programs for students with disabilities (DE#26, ¶38).

15.    Tapp also had contact with Assistant Academic Dean Leslie Roeder that day. He let her know that he would be meeting with a private attorney to represent himself against the school based upon his concerns he was a victim of discrimination based upon disability (DE#26, ¶40).

16.    On the very next day, Dean Valenza sent Tapp a letter upholding the decisions and confirming his dismissal from the program. In the letter, Tapp was directed to cease all activity and return any school-related items within five (5) days, with which Tapp complied. Apparently, Valenza changed his mind about waiting until the 21st to make a decision after learning Tapp was seeking legal counsel and Section 504 accommodations (DE#26, ¶41). This is the first attempt of intimidation and retaliation against Tapp.

17.    On September 11, Tapp, through his attorney, filed a complaint with the school which was directed to Dr. Roeder. It was later forwarded to the school's compliance office. The Compliance Officer informed Tapp an investigation would follow but only if Tapp waived his right to have his counsel present (DE#26, ¶42). This was the second attempt of intimidation and retaliation against Tapp.

18.    After he was dismissed from the Dental School, Plaintiff was compelled to plan for his educational and professional future. Not surprisingly, he turned to one of his former mentors, Dr. Jerry Bouquot, for advice and counsel. Plaintiff called Bouquot's office,

spoke with his secretary and made necessary arrangements to meet him on December 21, 2010, well over a year after his dismissal from the school (DE#26, ¶43).

19.    While peacefully sitting and meeting in his former professor's office, and without just cause, two officers, S. Beltran and Defendant J. Taylor from the *University of Texas System Police Department*, interrupted the meeting. And even though Tapp obviously was there with the Professor's consent, and even though Tapp was clearly and obviously calm and cooperative, Sgt. Taylor, detained and arrested him, rather than simply asking him to leave the premises. This was the third attempt of intimidation and retaliation against Tapp (DE#26, ¶44).

20.    In addition, Taylor used excessive force when twisting Tapp's right thumb in an effort to handcuff him, which also was unnecessary and without cause. Taylor transported Plaintiff to the Harris County Jail, where he spent the night, which was also unnecessary and without cause, and was charged with trespass (DE#26, ¶46). This was the fourth attempt of intimidation and retaliation against Tapp. Tapp was released from jail the next day.

21.    Apparently the two police officers had been instructed by Dean Valenza, to not permit Tapp to leave the campus voluntarily, but with the specific directive to have Tapp arrested (DE#26, ¶45). It is Tapp's understanding, by and through the arresting officer that Valenza told the officers that he had sent Tapp a letter warning him that if he came on campus, he would be arrested for trespass (DE#27, p. 9).

22.    Of course, this is not true. Neither the Dean or anyone with the UT HSC-Dental school sent such a letter to Tapp (DE#27, Exh. 1)).

23.    The Harris County Attorney's Office investigated the case for a criminal conviction. After

reviewing all the relevant evidence, the trespass charge was dismissed, as quite obviously they could not meet the elements for a charge, let alone a conviction (DE#26, ¶44). Among things in Tapp's favor was a letter of support from Professor Bouquot, noting that Tapp had been meeting with him on "official business" and with his consent and permission.

## V. <u>ARGUMENT AND AUTHORITIES</u>

A.   TAPP HAS SUFFICIENTLY PLED A CONSTITUTIONAL VIOLATION

24.   Valenza argues[1] that, in his individual capacity that he is protected by the doctrine of *Qualified Immunity*, which "works to shield government officials from liability for civil rights violations insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

25.   First and foremost, the Defendant does not contest that Tapp has a constitutional right to (1) be free from excessive force, pursuant to the to the Fourth Amendment of the United States Constitution; or (2) a liberty interest or a right to bodily integrity; or (3) a right to be free from an illegal and unwarranted arrest; or (4) a right to be free from an illegal and unwarranted imprisonment, with all these such rights guaranteed to him pursuant to the to *Due Process Clause* of the Fourteenth Amendment of the United States Constitution.

26.   Valenza does not argue that he did not know that any of his acts and omissions relative to this case would rise to the level of a constitutional violation. Nor does Valenza argue that

---

[1]. Plaintiff agrees that he has no claim against Valenza in his official capacity, so he proceeds against Valenza in his individual capacity. Plaintiff also agrees that he has no claims pursuant to the Texas Tort Claims Act but believes he continues to have relevant common law and state law claims against Valenza, in his individual capacity.

Tapp's claims of constitutional violations were not clearly established at the time of his misconduct. Wernecke v. Garcia, 591 F.3d 386, 392 (5th Cir. 2009). Rather, he puts the full weight of his argument on one theory, and a thin one at that, as to whether his conduct was unlawful or "reasonable" given the situation he confronted. Saucier v. Katz, 533 U.S. 194, 202 (2001).

27.    Here Valenza attempts to make his case by directing the Court to a letter he wrote in August 0f 2009 in which he directed Tapp to "... cease all activity in the building immediately upon receipt of this letter and surrender your identification badge." (DE#27, Exh. 1). It is uncontroverted that Tapp did exactly as requested — he ceased activity in the building, which at that time, only contemplated an educational situation, and turned in his badge. Valenza states that "it is clear that Dr. Valenza had instructed Plaintiff that he was forbidden to enter the School of Dentistry following his dismissal." A simple read of this letter in its entirety clearly and succinctly does not say what Dean Valenza claims it says. As the Defendant's own evidence raises a fact question as to just what was or was not clear, then his *Motion to Dismiss* should be denied.

28.    Further, Valenza seeks to validate his actions, as not "unlawful given the situation," Saucier at 202, by relying upon the elements of criminal trespass, which are (1) a person, commits an offense, (2) if the person enters or remains on the property of another, (3) without the effective consent and the person (4) had notice the entry was forbidden; or received notice to depart and failed to do so. Texas Penal Code §30.05(a). He apparently believes and wants this Court to believe as well, that because the elements of criminal trespass have ostensibly been met, then his actions were not constitutionally "unlawful

given the situation."

29.     First and foremost, when a public officer relies upon a qualified immunity defense as to determine whether or not something is unreasonable or unlawful "given the situation," the Court's often look to whether or not there were exigent circumstances. Here, Tapp came to the campus almost sixteen (16) months after he was dismissed from school. No emergency here.

30.     Nor is it clear that Tapp knew his entry was forbidden, as Valenza argues (of course there is a fact question as to whether or not Valenza could actually have banned Tapp forever from entering the building in any case). In addition, Tapp clearly had the consent of Professor Bouquot so another element of Valenza's "criminal trespass" defense fails. Last, Tapp was sitting in the Professor's office calmly speaking with him. Officer Taylor didn't even give Tapp a chance to peacefully depart, without an arrest. Valenza told the police to arrest Plaintiff and not let him leave. Given these facts, given "the situation", it is clear that Valenza's acts were not only unlawful, but were deliberate and intentional and based upon personal animus against Plaintiff. Valenza's acts are unconstitutional and not worthy to wear the cloak of immunity.

31.     In fact, as the factual predicate upon which Valenza's argument is based has already been rejected by the Harris County Attorney's Office, it should likewise be rejected by this Court. We ask the Court again to keep in mind that Valenza's acts were not objectively reasonable but rather based upon personal animus and of a retaliatory intent. Specifically, Valenza was angry at Tapp for meeting with an attorney (with an obvious implication of filing a lawsuit) and for filing a complaint with the school compliance officer.

32.     In short, Tapp has provided sufficient facts at this juncture in the litigation that Valenza's acts were not reasonable but were intended to retaliate and punish Tapp for his previous advocacy.

33.     In fact, UTHSC staff members continue to retaliate against Tapp for expressing his civil rights. Specifically, Tapp who is a registered nurse, is attempting to have the arrest record expunged so that he could at least practice in that field, without the arrest blotting out his otherwise excellent record, but school officials, by and though Valenza, refuse to sign the necessary papers (DE#26, ¶46-47). These petty and mean-spirited acts of retaliation by Valenza are not only not worthy of immunity, but rather are more worthy of a public scolding.

## VI. <u>CONCLUSION AND PRAYER</u>

34.     Tapp has found significant and compelling support in the pleadings for the proposition that Defendant Valenza violated the constitution when having him arrested and jailed and retaliating against him for expressing his civil rights. As such, Valenza's *Motion to Dismiss* should be denied.

WHEREFORE, Plaintiff prays that Defendant's *Motion to Dismiss* be denied in its entirety, or if not that Plaintiff be given leave of Court to amend his pleadings one more time, and in addition and also in the alternative, be given the opportunity to commence limited discovery related to Exhibit 1 and other issues reasonably related to Valenza's qualified immunity defense, and for such other such relief that may be awarded, whether it be in law or in equity, or both.

Respectfully submitted,

Cirkiel & Associates, P.C.

<u>Martin J. Cirkiel</u>
/s/ Mr. Martin J. Cirkiel, Esq.
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com
Texas Bar No. 00783829
Southern District Fed. ID# 21488

Greg White
State Bar No. 21329050
P. O. Box 2186
Waco, Texas 76703
(254) 717-5728 [Telephone]
(866) 521.5569 [Facsimile]
greg.white@texapplaw.com

**ATTORNEYS FOR PETITIONER**

## CERTIFICATE OF SERVICE

      This is to certify that on this the 14th day of March, 2012, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic filing system of the Court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means:

Mr. Darren G. Gibson, Esq.
Assistant Texas Attorney General
General Litigation Section
Post Office Box 12548
Capitol Station, Austin
Texas 78711-2548
(512) 463-2120 [Telephone]
(512) 320- 0667 [Facsimile]
darren.gibson@oag.state.tx.us


       /s/ Martin J. Cirkiel
      Martin J. Cirkiel