**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| STEPHEN TAPP, § | |
| § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-11-2971 |
| § | |
| DR. JOHN A. VALENZA, DEAN OF § | |
| THE UNIVERSITY OF TEXAS § | |
| HEALTH SCIENCE CENTER AT § | |
| HOUSTON – SCHOOL OF DENTISTRY, § | |
| IN HIS OFFICIAL CAPACITY AND § | |
| INDIVIDUALLY § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

**I.   Background and Claims**

This lawsuit arises from the dismissal of a student, Stephen Tapp, from the University of Texas Health Sciences Center at Houston ("UTHealth")—School of Dentistry. After UTHealth dismissed Tapp from the dental school on the basis of academic deficiencies, he sued UTHealth, alleging disability discrimination. (Docket Entry No. 1). Tapp amended his complaint to add two defendants, John A. Valenza, D.D.S., Dean of the School of Dentistry, and Sergeant J. Taylor of the University of Texas System Police Department. Against Valenza and Taylor, Tapp added claims under 42 U.S.C. § 1983 for false arrest and excessive force. (Docket Entry No. 5). UTHealth moved to dismiss the disability-discrimination claims on the basis of limitations, (Docket Entry No. 6), and Tapp responded by moving for leave to file a second amended complaint, (Docket Entry No. 8). In December 2011, this court granted UTHealth's motion to dismiss the disability-discrimination claims, with prejudice, concluding that those claims were time-barred and that amendment would be futile. The court denied Tapp's motion for leave to file the proposed second amended complaint

that he previously had submitted. The court did allow him to file a new second amended complaint that did not reassert the dismissed claims. (Docket Entry No. 24).

Tapp timely filed a second amended complaint. (Docket Entry No. 26). This complaint named Dr. Valenza, in both his official and individual capacities, as the only defendant. Tapp has asserted four causes of action against Dr. Valenza. One is a § 1983 claim for false arrest.[1] The other three are state-law claims for assault,[2] false imprisonment, and defamation. Neither the federal nor state-law causes of action arise from the school's August 2009 decision to expel Tapp as a student. Instead, the only basis for the causes of action is a December 2010 occurrence. The facts alleged in the complaint and those properly reviewed in deciding the motion to dismiss are briefly described below.

On July 23, 2009, Tapp—then a student at the UTHealth's School of Dentistry—received a letter from Associate Dean Leslie Roeder recommending that he be dismissed from the school. (Docket Entry No. 26, ¶ 26). On August 4, Tapp appealed the decision to an *ad hoc* appeals committee, arguing that his mental-health condition justified his remaining at the school. (*Id.*, ¶¶ 28, 31). On August 12, 2009, Tapp informed Dr. Roeder that he would be meeting with an attorney about possible legal action against UTHealth for disability discrimination. (*Id.*, ¶ 40). There is no allegation that Dr. Roeder relayed this information to Dr. Valenza. On August 13, 2009, Dr. Valenza sent Tapp a letter upholding his dismissal from the dental school. (*Id.*, ¶ 41). Among other

---

[1] Tapp did not allege a § 1983 claim against Dr. Valenza for excessive force. (*See* Docket Entry No. 26, ¶ 49 ("Defendant, acting under color of law, had Plaintiff arrested and jailed without cause, thereby depriving Plaintiff of his liberty without due process, thereby violating the Fourteenth Amendment to the Constitution of the United States, for which Defendant is liable pursuant to 42 U.S.C. § 1983.")).

[2] Tapp has alleged two separate assault claims: one for assault by infliction of bodily injury, (Docket Entry No. 26, ¶ 51), and one for assault by offensive physical contact, (*id.*, ¶ 53). This opinion treats the claims together because the analysis is the same for each.

2

things, the letter stated that Tapp was "to cease all activity in the building upon receipt of this letter and surrender [his] identification badge." (Docket Entry No. 27, Ex. 1).[3] On September 11, 2009, Tapp filed an internal complaint with the school alleging disability discrimination, but the complaint was never investigated by the university's administration. (Docket Entry No. 26, ¶ 42).

Over a year later, on December 21, 2010, Tapp entered the School of Dentistry to meet with Dr. Jerry Bouquot, one of his former professors, in Dr. Bouquot's office. Tapp had scheduled this meeting through Dr. Bouquot's secretary. (*Id.*, ¶ 43). Tapp had not yet filed a lawsuit against the school or any members of its faculty or administration. Except for the internal complaint, there is no allegation of any further legal or other action Tapp had taken against the school from the date of his expulsion to December 21, 2010. According to the second amended complaint, "[w]hile peacefully meeting in his former professor's office, and without just cause," two campus officers interrupted the meeting and arrested Tapp for trespassing. (*Id.*, ¶ 44). During the arrest, the officers allegedly "caus[ed] Tapp physical pain when handcuffing him." (*Id.*). Tapp was charged with trespassing and taken to Harris County Jail. He does not allege how long he remained in the jail. The charges were dismissed. (*Id.*). Tapp alleges that "Valenza falsely told the officers that he had sent Tapp a letter warning him that if he came on campus, he would be arrested for trespassing." (*Id.*, ¶ 45).

## II.     The Legal Standard for a Motion to Dismiss

---

[3] Ordinarily, a district court may not look beyond the pleadings when deciding a motion to dismiss. *See, e.g.*, 5B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2004). The Fifth Circuit recognizes one limited exception to this rule. When documents "are referred to in the plaintiff's complaint and are central to the plaintiff's claim," a district court may consider those documents when they are attached to the motion to dismiss. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Tapp refers to the letter in his complaint and it is appropriately considered in deciding this motion to dismiss, without the need to convert the motion to one for summary judgment. The threshold inquiry is whether Tapp has adequately stated a claim that can overcome qualified immunity.

A complaint may be dismissed when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to withstand a Rule 12(b)(6) motion. *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Facial plausibility "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor is facial plausibility "akin to a 'probability requirement'"; rather, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Facial plausibility requires "the plaintiff [to] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When a plaintiff's complaint fails to state a claim, a district court generally should provide the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case"); *see also United States ex rel. Adrian v. Regents*

4

*of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). A district court has broad discretion to dismiss a complaint without leave to amend "where the plaintiff has previously been granted leave to amend [to cure pleading deficiencies] and has subsequently failed to add the requisite particularity to its claims[.]" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (affirming a district court's dismissal for failure to state a claim without leave to amend after the court "instructed [the plaintiffs] to plead their fraud claim with greater particularity, but the amended complaint was still woefully inadequate"). And when the issue is not pleading sufficiency but whether the law recognizes a cause of action on the facts alleged, if the court concludes that the law affords no relief and that repleading would be futile, no opportunity to amend is required.

## III.     The Motion to Dismiss the State-Law Claims

Dr. Valenza has moved to dismiss all the claims against him. As to the state-law claims against him in his official capacity, Dr. Valenza also asserts governmental immunity not waived by the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.021. (Docket Entry No. 27). In response, Tapp stated that he "agrees that he has no claim against Valenza in his official capacity, so he proceeds against Valenza in his individual capacity." (Docket Entry No. 30, ¶ 24 n.1). The motion to dismiss the claims against Dr. Valenza in his official capacity is granted, with prejudice and without leave to amend.

5

Tapp continues to assert the state-law claims against Dr. Valenza in his individual capacity. Tapp conceded, however, that "that he has no claims pursuant to the Texas Tort Claims Act[.]" (*Id.*). Although he stated that he "believes he continues to have relevant common law and state law claims against Valenza, in his individual capacity," (*id.*), he does not plead them or identify them in his response. Moreover, as Dr. Valenza correctly points out, "all tort suits are suits under the Texas Tort Claims Act." *Brown v. Ke-Ping Xie*, 260 S.W.3d 117, 122 n.1 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *accord Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) ("[A]ll tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106."). Tapp cannot avoid the TTCA by alleging that he is suing Dr. Valenza in his individual capacity.

The TTCA, in relevant part, states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.

TEX. CIV. PRAC. & REM. CODE § 101.106(f). "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *Anderson v. Bessman*, 365 S.W.3d 119, 125 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994)). Tapp alleged that "Valenza was responsible for the[] management and control of all school business within its jurisdiction[.]" (Docket Entry No. 26, ¶ 9). A university dean who acts to restrict a person's access to the campus and has that person arrested for remaining on campus is acting within the scope of his employment. *See Justice For All v. Faulkner,* 410 F.3d 760, 765 (5th Cir. 2005) ("Public universities can and typically do restrict access to campus facilities."). As Dr. Valenza points out, "[c]ommunicating with campus police regarding campus

6

safety and directing those police officers to arrest trespassers are actions not of a private individual, but are only actions that can be take by a university official." (Docket Entry No. 27, at 13). This is true even if Dr. Valenza "brought personal motives to bear in" taking these actions. *See Anderson*, 365 S.W.3d at 125–126 ("So long as it falls within the duties assigned, an employee's conduct is 'within the scope of employment,' even if done in part to serve the purposes of the employee or a third person.").

Although Tapp asserts (but does not plead) unidentified state-law tort claims against Dr. Valenza in his individual capacity under Texas law, those claims are treated directed to his official capacity. *Cf. George v. Harris Cnty., Tex.*, Civ. A. No. H-10-3235, 2012 WL 2744332, at *14 (S.D. Tex. July 9, 2012) (reconstruing claims brought against government officials in individual capacities as against those officials in their official capacities, pursuant to the TTCA). Dr. Valenza is entitled to governmental immunity on the state-law claims asserted against him in his individual as well as his official capacity. *See id.* at *13 ("Governmental immunity also extends to state employees sued in their official capacities." (citing *Alcala v. Tex. Webb. Cnty.*, 620 F. Supp. 2d 795, 801 (S.D. Tex. 2009)); *see also* TEX. CIV. PRAC. & REM. CODE § 101.057(2) (no waiver of governmental immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort"). These claims are dismissed, with prejudice and without leave to amend. *See also Steury*, 625 F.3d at 271 (holding that a district court has discretion to deny leave to amend when the pleading defects are "incurable").

### IV.     The Motion to Dismiss the § 1983 Claim

The remaining question is whether Tapp's § 1983 claim against Dr. Valenza in his individual capacity should be dismissed based on qualified immunity and, if so, whether that dismissal should be with or without prejudice.

### A. The Legal Standard for Qualified Immunity

42 U.S.C. § 1983 provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right. But "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). As the en banc Fifth Circuit recently held:

> When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that "*every* 'reasonable official would understand that what he is doing violates [the law].'" To answer that question in the affirmative, we must be able to point to controlling authority—or a "robust 'consensus of persuasive authority'"—that defines the contours of the right in question with a high degree of particularity.

*Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 2084 (2011)) (internal footnotes omitted; alterations in original). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted).

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v.*

*Epps*, 659 F.3d 440, 445 (5th Cir. 2011).  District courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.

### B.   Analysis

According to Tapp, "[t]he police officers had been instructed by Defendant Valenza to arrest Tapp" for criminal trespass.  (Docket Entry No. 26, ¶ 45).  "[T]he offense of criminal trespass consists of the following elements: (1) a person (2) without effective consent (3) enters or remains on the property or in a building of another (4) knowingly or intentionally or recklessly (5) when he had notice that entry was forbidden or received notice to depart but failed to do so."  *Texas Dep't of Pub. Safety v. Axt*, 292 S.W.3d 736, 739–40 (Tex. App.—Fort Worth 2009, no pet.) (citing *Day v. State*, 532 S.W.2d 302, 306 n.2 (Tex. Crim. App. 1976), *disapproved of on other grounds by Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007)); *see also* TEX. PENAL CODE § 30.05.  In order to establish a Fourth Amendment violation for false arrest, Tapp must show that Dr. Valenza lacked an objectively reasonable basis to order the officers to arrest him for trespassing.  "The constitutional claim of false arrest requires a showing of no probable cause."  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).  Probable cause is determined from "an objective standard, which means that we will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense."  *Id.* (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004)); *see also United States v. Ochoa*, 667 F.3d 643, 649 (5th Cir. 2012) ("Probable cause for a warrantless arrest exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." (internal quotation marks omitted)).  Under Texas

law, "[a] finding of probable cause requires more than bare suspicion but less than would justify conviction." *State v. Mosely*, 348 S.W.3d 435, 441 (Tex. App.—Austin 2011, pet. ref'd) (citing *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009)); *accord United States v. Marioni-Melendez*, 460 F. App'x 336, 339 (5th Cir. 2012) (per curiam) (citing *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2011)).

Tapp does not dispute that, in August 2009, he received a letter from Dr. Valenza stating that he had been expelled and was "to cease all activity in the building upon receipt of this letter and surrender [his] identification badge." (Docket Entry No. 27, Ex. 1). According to Tapp, this referred only to ceasing activity related to receiving his dental education; it does not refer to other activity, such as having a meeting with a former professor for professional advice. (*See* Docket Entry No. 30, ¶¶ 27, 30).

The issue, however, is not how Tapp subjectively interpreted the letter. The issue is whether it was objectively reasonable for Dr. Valenza to interpret the August 2009 letter as providing notice to Tapp that he was forbidden to enter the dental school after receiving the letter. Probable cause is determined from the standpoint of the arresting officer—or, in this case, Valenza, who is alleged to be the official instructing officers to make the arrest. *Cf. Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (discussing how a supervisory official can be held liable under § 1983 when the plaintiff alleges the supervisory official's "overt personal participation in the violation of his own rights," such as by alleging that the supervisory official "gave any command, signal, or other form of direction to the officers that prompted [the officers] to arrest and subdue" the plaintiff (internal

quotation marks omitted)).⁴  If the facts Tapp alleged show that, as a matter of law, it was objectively reasonable for Dr. Valenza to believe that Tapp was on notice that he was prohibited from entering the dental school based on the August 2009 letter, then Dr. Valenza is entitled to dismissal based on qualified immunity.

The letter Tapp received when he was dismissed from the school in August 2009 instructed him that he was to "cease all activity in the building upon receipt of this letter" and turn in his identification badge. (Docket Entry No. 27, Ex. 1). The letter did not simply tell Tapp to stop activities related to his prior status as a student, as Tapp argues. The letter told him to "cease all activity in the building" and to turn in his identification. It was objectively reasonable for Dr. Valenza to read the letter as providing notice to Tapp that, as an expelled student who had been instructed to "cease all activity in the building" and relinquish his identification badge, he was forbidden to enter the building. Tapp cannot demonstrate that every reasonable dean in Dr. Valenza's position would conclude that directing police to arrest Tapp for trespass for reentering the dental school under these circumstances was unlawful. *See Morgan*, 659 F.3d at 371–72.

According to Tapp's response, Dr. Valenza is not entitled to qualified immunity because there was no "emergency" situation, (Docket Entry No. 30, ¶ 29); Tapp did not trespass because he did not clearly know that he was banned from entering the dental school, (*id.*, ¶ 30); the officers did not allow Tapp to leave first before arresting him, (*id.*); and Valenza's arrest order was "based upon personal animus and a retaliatory intent," (*id.*, ¶ 31). As to the first argument, there is no

---

⁴ If the campus officers arrested "through their own volition," as opposed to "carry[ing] out the request of" Dr. Valenza, then Tapp cannot proceed with his false-arrest claim against Dr. Valenza. *Ewans v. Wells Fargo Bank, N.A.*, 389 F. App'x 383, 389 (5th Cir. 2010) (per curiam) (internal quotation marks omitted); *see also Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 528–29 (5th Cir. 1994) (holding that a private citizen cannot be held liable for false arrest under Texas law based on a tip to officers when the officers "did not rely on this information in determining whether to arrest" the plaintiff but, instead, arrested the plaintiff on their own volition).

11

requirement that exigent or emergency circumstances exist for an officer to make a warrantless arrest for criminal trespass or other criminal offense; rather, the requirement is that the officer have probable cause to believe that the individual had committed or was committing a criminal offense. *See Ochoa*, 667 F.3d at 649; *Club Retro*, 568 F.3d at 204.  Second, as discussed above, the issue is not what Tapp did or did not "clearly know"; the issue is what was objectively reasonable from the viewpoint of Dr. Valenza in light of the letter.  Third, there is no requirement that officers first give a person they objectively believe to be criminally trespassing a chance to leave the location before arresting him for criminal trespass.

Tapp's final argument is that Dr. Valenza acted based on "personal animus" and "retaliatory intent" in ordering him arrested for trespass.  (Docket Entry No. 30, ¶ 31).  According to Tapp, Dr. Valenza was angry at him for having met with an attorney and for filing a complaint with the school compliance officer.  (*Id.*).  Both these events occurred over a year earlier.  But if Dr. Valenza had an objectively reasonable basis to believe that Tapp was trespassing by his presence in the building based on what was stated in the August 2009 letter, he is entitled to qualified immunity even if he had other reasons for personal animus toward Tapp.  "[S]ubjective intent, motive, or even outright animus are irrelevant in a determination of qualified immunity based on arguable probable cause to arrest, just as an officer's good intent is irrelevant when he contravenes settled law." *Lockett v. New Orleans City*, 607 F.3d 992, 998 (5th Cir. 2010) (internal quotation marks omitted); *see also Swindle v. Livingston Parish School Bd.*, 655 F.3d 386, 401 (5th Cir. 2011) ("[W]e perform an objective analysis of the reasonableness of the official's conduct in light of the circumstances and are forbidden from considering the official's subjective state of mind." (internal quotation marks omitted)).  And Tapp does not allege such personal animus by Dr. Valenza in his second amended

complaint. The only allegation of personal animus is in reference to the refusal of UTHealth ("working under Defendant Valenza") to assist Tapp in expunging his trespass-arrest records. (Docket Entry No. 26, ¶ 47).

Tapp argues that he should be permitted discovery into Dr. Valenza's state of mind before a decision is made on qualified immunity. "One of the reasons for qualified immunity is to protect a defendant from the burdens of discovery when the plaintiff has not filed an adequate claim." *Winstead v. Box*, 419 F. App'x 468, 469 (5th Cir. 2011) (per curiam) (citing *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). The Fifth Circuit has held that this court may not allow discovery to proceed until it "*first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Id.* (emphasis in original; internal quotation marks omitted) (citing *Wicks*, 41 F.3d at 994). Here, Tapp's pleadings do not pass this test, for the reasons explained in detail above. He relies on allegations of Dr. Valenza's subjective bad motive but pleads facts that, if proven, would show that Dr. Valenza was objectively reasonable in his actions. Had Tapp's "complaint allege[d] facts to overcome the defense of qualified immunity," this court could "allow the discovery necessary to clarify those facts upon which the immunity defense turns." *Id.* (quoting *Wicks*, 41 F.3d at 995). Because Tapp's complaint fails to do so, instead alleging facts that support qualified immunity, this court may not order a period of discovery, as Tapp requests.

A plaintiff is often given an opportunity to amend his complaint, in order to state his "best case." *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) (internal quotation marks omitted). Tapp has already had that opportunity—he has amended twice, without success. And the record discloses facts that support qualified immunity, making amendment futile. This case

is dismissed, with prejudice.

**IV.     Conclusion**

Dr. Valenza's motion to dismiss, (Docket Entry No. 27), is granted, with prejudice and without leave to amend.   Final judgment is entered by separate order.

SIGNED on August 6, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge