```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
                              HOUSTON DIVISION


STEPHEN TAPP,                  )
                               )
       Plaintiff,              )
                               )
v.                             )         NO. H-11-CV-2971
                               )         December 16, 2011
THE UNIVERSITY OF TEXAS        )
HEALTH SCIENCES CENTER AT      )
HOUSTON - SCHOOL OF            )
DENTISTRY,                     )
                               )
       Defendant.              )



                         RULE 16 CONFERENCE
              BEFORE THE HONORABLE LEE H. ROSENTHAL




For the Plaintiff:        Mr. Greg White
                          Attorney at Law
                          P.O. Box 2186
                          Waco, Texas 76703

For the Defendant:        Ms. Mishell B. Kneeland
                          Mr. Darren G. Gibson
                          Office of the Attorney General
                          300 West 15th Street, 11th Floor
                          Austin, Texas  78701
Court Reporter:
                          Bruce Slavin, RPR, CM




Proceedings reported by mechanical stenography and produced
by computer-aided transcription.
```

1          THE COURT:  Tapp v. University of Texas.  Come on
2   up.
3          MS. KNEELAND:  Good morning, Your Honor.  Mishell
4   Kneeland and Darren Gibson from the Attorney General's
5   Office for the Defendant University of Texas Health Science
6   Center at Houston, and we will eventually be making official
7   appearances on behalf of the individual defendants who were
8   only recently served.
9          THE COURT:  And I gather they have now been served.
10         MS. KNEELAND:  They now have been.
11         MR. WHITE:  Your Honor, my name is Greg White.  I
12  am appearing here, basically, for Mr. Cirkiel.  I filed a
13  notice of appearance yesterday, and I have made myself aware
14  of what's going on in this case.  I believe I can be counsel
15  for Mr. Tapp today.
16         THE COURT:  Good.
17             All right.  I think we have -- the major issue
18  or one of the major issues appears to be limitations.  Is
19  that right?
20         MR. WHITE:  Yes.
21         MS. KNEELAND:  Yes.  That's correct, Your Honor.
22  The original complaint filed by the Plaintiff asserted
23  claims under the ADA and the Rehab Act which have a two-year
24  statute of limitations.
25             He referenced being notified about his

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | dismissal from the medical center or about his pending                 |
|       | 2  | dismissal.  We actually attached the letter, which is                  |
|       | 3  | commonplace here in this court, and I know that you, Your              |
|       | 4  | Honor, herself, have looked at documents attached to the               |
| 10:42 | 5  | pleadings or that are referenced in the pleadings.                     |
|       | 6  | THE COURT:  Yes.                                                       |
|       | 7  | MS. KNEELAND:  These are clearly outside of the                        |
|       | 8  | statute of limitations.  He got the letter on the 23rd of              |
|       | 9  | July of 2009 and he didn't file his petition until August              |
| 10:42 | 10 | 11th of 2011.  But it's a pretty clear math problem and he             |
|       | 11 | missed it.                                                             |
|       | 12 | He now, in his motion to amend, sort of says,                          |
|       | 13 | 'Well, I am trying to bootstrap the fraudulent concealment             |
|       | 14 | onto this,' but he doesn't really explain how that changes             |
| 10:42 | 15 | the statute of limitations for these two particular claims             |
|       | 16 | when there's no fraud claim in this case at all.                       |
|       | 17 | THE COURT:  And if the discovery rule is the basis                     |
|       | 18 | for the -- I assume that's what you're trying to argue.                |
|       | 19 | MR. WHITE:  Well, I don't see the discovery rule as                    |
| 10:42 | 20 | being in the response Mr. Cirkiel filed.  I think that he --           |
|       | 21 | THE COURT:  He said it was a constructive fraud                        |
|       | 22 | claim.                                                                 |
|       | 23 | MR. WHITE:  Constructive fraud claim?  I think                         |
|       | 24 | that --                                                                |
| 10:43 | 25 | THE COURT:  Tell me how that works here.                               |

```
                 1          MR. WHITE:  Well, I think what he was arguing was
                 2    that, because Mr. Tapp was told that he should not mention
                 3    any of these disabilities, then he was delayed in making any
                 4    claim.
        10:43     5          I think, also, on the simple math problem, the
                 6    allegation is that Mr. Tapp was told that he would have a
                 7    meeting on August the 13th of 2009 at which time final
                 8    decisions would be made.  In other words, this letter was
                 9    not the -- was a dismissal but not the final one; that there
        10:43    10    were more meetings to be had and that the dean was going to
                11    either reconsider or to finally consider what was said in
                12    that letter.  That is in the pleadings that are currently on
                13    file.  Then, on August 12th, he was told that a final
                14    decision would be coming on August 21st, despite the
        10:43    15    existence of this prior letter.
                16          Now, I don't think that's a --
                17       THE COURT:  Was there a final written decision on
                18    August 21?
                19       MR. WHITE:  On August 13th, the allegation in the
        10:44    20    pleadings is that, after learning that Tapp had engaged
                21    counsel or was looking for counsel, that the Dean, Valenza,
                22    actually sent a letter upholding the dismissal.
                23       MS. KNEELAND:  And that's the key part, upholding
                24    the dismissal.  This is an appeal process from a dismissal
        10:44    25    that happened on a date certain.  It's when the decision is
```

1  communicated -- Even if the dismissal --
2             Let's say that he got the letter on July 1 and
3  it wasn't effective until the 11th.  July 1 would have been
4  when -- the binding law in this circuit holds that the
10:44  5  statute of limitations runs from that date.  And that's
6  unfortunate, but it is the way of the world in this circuit
7  as it stands right now, and I could find no cases to the
8  contrary.
9             THE COURT:  Are you aware of any cases to the
10:44  10 contrary?
11            MR. WHITE:  No.  I will point out, though, that
12 part of the pleadings also say that when Mr. Tapp came to
13 the Health Science Center to kind of discuss all this he was
14 treated in a demeaning and humiliating fashion by being
10:45  15 escorted about by policemen after having been originally
16 invited there.  I think that probably survives the statute
17 of limitations claim.
18            THE COURT:  And gives you zero damages.  I mean,
19 that's not a big damage item.
10:45  20            MR. WHITE:  Not a big damage item.  I agree.  It
21 doesn't make it right.
22            THE COURT:  I'm not saying it makes it right or
23 anything like that, just in terms of whether  a) it does
24 survive and  b) it makes any sense for that to be the basis
10:45  25 for the only claim in this lawsuit, if that's where we are

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | at that point.  So, I would ask you that question.  Does it          |
|       | 2  | make sense?                                                          |
|       | 3  |     MR. WHITE:  Your Honor, I would like to be in a |
|       | 4  | position to make that call, but having been engaged --               |
| 10:45 | 5  |     THE COURT:  I will look at it.               |
|       | 6  |     MR. WHITE:  Thank you.                       |
|       | 7  |     THE COURT:  Even as to that, there would likely be |
|       | 8  | immunity arguments that would --                                     |
|       | 9  |     MR. WHITE:  -- engage us in a lot of activity |
| 10:45 | 10 | and --                                                               |
|       | 11 |     THE COURT:  Yes.  Thank you.                 |
|       | 12 |     MR. WHITE:  -- consideration that might not be, |
|       | 13 | traditionally, wise.                                                 |
|       | 14 |     MS. KNEELAND:  And I would point out that that |
| 10:46 | 15 | actually -- that this is the 1983 claims rather than the ADA         |
|       | 16 | or Rehab Act claims, which is what we're focused on in this          |
|       | 17 | particular motion to dismiss.  He has tried to sort of bring         |
|       | 18 | in the breach of contract allegations, and he doesn't really         |
|       | 19 | ever address the futility of that, and I know that that's            |
| 10:46 | 20 | sort of smooshed together.  We're kind of sticking on the            |
|       | 21 | motion to dismiss.                                                   |
|       | 22 | But the current motion to dismiss is ADA and                         |
|       | 23 | Rehab Act claims against the University only and not against         |
|       | 24 | the individuals, and nothing about that activity or the              |
| 10:46 | 25 | claims made in any of the additional petitions goes to that          |

```
         1   with conduct after the 11th.
         2            THE COURT:  I appreciate that.
         3            So, let's assume that I grant the motion to
         4   dismiss.  Let's just assume that.
10:46    5            MR. WHITE:  Okay.  And maybe I might just propose a
         6   different kind of procedural path through this --
         7            THE COURT:  All right.
         8            MR. WHITE:  -- and that would be if the Court would
         9   permit the filing of the amended complaint to which the
10:46   10   motion to dismiss doesn't need to be amended or otherwise
        11   engaged with respect to the Rehab claim and the ADA claim,
        12   the same --
        13            THE COURT:  That's fine.  But if there's a futility
        14   problem here, then they would have to reassert their
10:47   15   arguments and it would -- I mean, that's fine.  If there's a
        16   basis for leave to amend in good faith, consistent with
        17   Rule 11 and all of the bells and whistles --
        18            MR. WHITE:  I understand.
        19            THE COURT:  -- then that's fine, but I am
10:47   20   apprehensive --
        21            MR. WHITE:  All right.
        22            THE COURT:  -- that the limitations points are
        23   sufficiently clear given the Fifth Circuit law --
        24            MR. WHITE:  Understood.
10:47   25            THE COURT:  -- that it just doesn't make sense to
```

```
         1  do that.
         2          MR. WHITE:  Okay.
         3          THE COURT:  But tell me why you disagree, if you
         4  do.
10:47    5          MR. WHITE:  No.  I think it would have been six of
         6  one and one-half dozen the other, actually.  I was just --
         7  My mind had made a path through this.  I see your point.
         8  Fine.
         9          THE COURT:  If I think there is a reasonable basis
10:48   10  to amend, I think you would be right, but I am quite worried
        11  about the futility claim.
        12          MS. KNEELAND:  And, Your Honor, the University
        13  should be out of this case.  We haven't actually done much
        14  research into the issues relating to the individual
10:48   15  defendants.  There's a bunch of new claims.
        16              What would be best would be an entirely new
        17  complaint aimed only at the individual defendants, only
        18  asserting facts to go with the individual defendants, so
        19  that when Mr. Gibson, the lucky man who gets to inherit this
10:48   20  case from me, looks into it and tries to decide which --
        21  what claims are going to be --
        22              Originally, in the first amended complaint, I
        23  can't say we were going to do a 12(b) motion, but the second
        24  one, now that he is adding a claim relating to the
10:48   25  dismissal -- well, he's guaranteed we have a 12(b) motion
```

1  that we're going to be filing, which he didn't need to do.
2  He should have known that the same statute of limitations
3  applies.
4          But the cleanest way to do this would be grant
10:48  5  the University's motion to dismiss, get rid of them.  Let's
6  find out what the claims are against the individuals that
7  they want to go forward with, file that complaint.  We still
8  get the 60 days from the original service date to answer and
9  then we can come forth with whatever -- you know, whether
10:49  10  it's going to be immunity, and then I think we should start
11  all over, to be perfectly honest.  I hate delay.
12          THE COURT:  On the individual defendants.
13          MS. KNEELAND:  Yes.
14          THE COURT:  I think that makes sense, because
10:49  15  there, I think, amendment does make a lot of sense.
16          MS. KNEELAND:  Yeah.  Just get it all on the table,
17  what are we defending against.  No more amendment after
18  this, though.  Let us answer or respond to that petition --
19          THE COURT:  I think that makes sense.
10:49  20              Does that work?
21          MR. WHITE:  Fair enough.
22          THE COURT:  Because that builds in your point as
23  well.
24          MR. WHITE:  Yes.
10:49  25          THE COURT:  So, I will rule on the motion to

|  |  |
|---|---|
|  | 1    dismiss as to the University and you will have until January |
|  | 2    20th to amend with respect to the individual defendants. |
|  | 3    And then you will file within -- you will file your motion |
|  | 4    to dismiss based on the amended pleading, because I assume |
| 10:49 | 5    you would at that point.  Any motion to dismiss. |
|  | 6              MS. KNEELAND:  Any kind of motion to dismiss or -- |
|  | 7    I don't know where we'll be because I don't know what |
|  | 8    they're going to put in it, but -- |
|  | 9              THE COURT:  And I appreciate that.  But if you did |
| 10:50 | 10   that by February 17 -- and I'm not ordering you to file a |
|  | 11   motion to dismiss, obviously, but, if you do, it has to be |
|  | 12   done by that date.  And then we'll be off. |
|  | 13             MR. WHITE:  Are we considering that these |
|  | 14   individuals have not actually filed any appearance in this? |
| 10:50 | 15   So, am I able to simply send this amended complaint by |
|  | 16   January 20th to counsel and there will be no additional |
|  | 17   service necessary? |
|  | 18             MR. GIBSON:  Yes. |
|  | 19             MR. WHITE:  Fair enough. |
| 10:50 | 20             MS. KNEELAND:  We are generally cooperative in such |
|  | 21   matters.  We just want to know what claims we're facing and |
|  | 22   how the -- |
|  | 23             THE COURT:  I think that works.  And I think that's |
|  | 24   what we need to put in place for today. |
| 10:50 | 25             MS. KNEELAND:  And no more University.  Right? |

1          THE COURT:  I expect the motion to dismiss will be
2    promptly granted.
3          MR. WHITE:  Thank you, Your Honor.
4          MS. KNEELAND:  May we be dismissed?
5          THE COURT:  Yes.
6          MS. KNEELAND:  And I apologize for having my
7    BlackBerry, but that's what I was reading the opposition off
8    of.  So....
9          THE COURT:  Not a problem.
10
11              COURT REPORTER'S CERTIFICATE
12         I, BRUCE SLAVIN, certify that the foregoing is a
13   correct transcript from the record of proceedings in the
14   above-entitled matter, to the best of my ability.
15
16                              *s/Bruce Slavin*
                                BRUCE SLAVIN, RPR, CM
17
18
19
20
21
22
23
24
25

10:50 (at line 5)